JOFFE, Appellant,

v.

CABLE TECH, INC. et al., Appellees.

[Cite as *Joffe v. Cable Tech, Inc.,* 163 Ohio App.3d 479, 2005-Ohio-4930.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–40.

Decided Sept. 20, 2005.

480

Kennedy & Knoll and Nicholas E. Kennedy, for appellant.

Squire, Sanders & Dempsey, L.L.P., Susan M. DiMickele, and Lori Maiorca Zancourides, for appellees.

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, Matt Joffe, appeals from the judgment of the Franklin County Court of Common Pleas that dismissed his case for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2).

{¶ 2} On October 3, 2003, appellant filed a complaint against defendants-appellees, Cable Tech, Inc. and Bruce Stone, the Cable Tech national director of sales and quality systems. In the complaint, appellant alleged the following: (1) appellant was living and working in California when Cable Tech "became aware of [appellant]" through an employment placement agency and offered him a position in Columbus, Ohio; (2) "[t]hrough various phone conversations and emails that occurred in February and March of 2003, Stone, acting on behalf of

Cable Tech, apprised [appellant] of the position of Field Service Technician, informed him that he was hired, and instructed him that his start date was March 21, 2003"; (3) Stone "provided [appellant] with an 'offer of employment' letter that [appellant] signed and sen[t] back to Cable Tech indicating his acceptance of Cable Tech's terms"; (4) "[b]ased upon [appellees'] representations, [appellant] and his wife uprooted and moved to Columbus so that [appellant] could take the new position with Cable Tech"; (5) when appellant and his wife arrived in Columbus, appellees did not have work for appellant; and (6) at the end of April, Stone told appellant that " 'we need only one employee in Ohio' " and that appellant would not be working for Cable Tech. Appellant asserted that he suffered damages from appellees' conduct and raised claims of "breach of contract/detrimental reliance," fraudulent inducement, unlawful discriminatory practices in violation of R.C. 4112.02 et. seq., and a violation of Ohio public policy.

{¶ 3} Appellees moved to dismiss appellant's complaint for lack of personal jurisdiction and improper venue pursuant to Civ.R. 12(B)(2) and 12(B)(3) respectively. Eric Stroud, Cable Tech president and chief executive officer, and Stone attached affidavits to the motion.

{¶ 4} Stroud's affidavit indicated the following: (1) Cable Tech is incorporated in Iowa with its principal place of business in Iowa; (2) Cable Tech provides service, installation, and maintenance to phone systems, including installing, moving or changing cable lines; (3) Cable Tech has never been licensed to do business in Ohio; (4) Cable Tech has never maintained an office in Ohio; (5) Cable Tech does not "regularly conduct business in Ohio"; (6) Cable Tech "has hired independent contractors * * * to provide services in the Cleveland area on behalf of Sprint * * * but these independent contractor jobs equate to less than 25 total hours worked in Ohio," and Sprint, "a non-Ohio based company," paid for the jobs "through its office" in Kansas; (7) "[a]round Spring 2003, Cable Tech was considering placing Field Service Technicians in Ohio, based on a new service contract it had acquired with Sprint to provide phone system services on behalf of Sprint," and it "appeared this would include significant work in the Columbus, Ohio area"; (8) the business opportunity with Sprint "was not realized, and so Cable Tech could not employ any Field Service Technicians for that area as planned"; (9) "[a]t no time were Cable Tech representatives present in Ohio related to the present dispute"; and (10) Stroud "would be significantly burdened if forced to defend this lawsuit in Ohio" because it "would be extremely difficult for both [him], as well as [his] employees, to travel to Ohio on what might result in several lengthy trips over the course of this litigation" and because "Cable Tech's business operations would be significantly disrupted by [his] absence, as well as the absence of other employees."

{¶ 5} Stone's affidavit indicated the following: (1) Cable Tech is incorporated in Iowa and has its principal place of business in Iowa; (2) Cable Tech has never been licensed to do business in Ohio; (3) Cable Tech does not regularly conduct business in Ohio; (4) Stone has "not been involved in the discreet subcontracting work [Cable Tech has] done in Ohio"; (5) Stone is an Iowa resident; (6) Stone has not been in Ohio in the last ten years and has never been in Ohio on behalf of Cable Tech, "including related to this matter"; (7) "[a]round the spring of 2003, [Stone] received information about [appellant], then a resident of California," through an employment placement agency; (8) Stone originally contacted appellant for work in California but learned that appellant was moving to Ohio and was interested in a position in Ohio; (9) "[m]ost communication[s] that occurred between [appellant] and [Stone] were exchanged via electronic mail or telephone while [appellant] resid[ed] in California, including his interview"; (10) "[a]t that time, Cable Tech was considering placing Field Service Technicians in Ohio, based on a new service contract it had acquired with Sprint"; (11) the Sprint contract "would include significant work in the Columbus, Ohio area"; (12) "[b]ecause of the unpredictability of this new business opportunity, [appellant], while still residing in California, was only offered a position to serve as an independent contractor for Cable Tech" and, after 60 days, appellant "would only become an employee of Cable Tech * * * if both Cable Tech and [appellant] mutually agreed that was desirable"; (13) "[o]ver the course of the next month or so, [appellant] and [Stone] exchanged a few electronic mail and telephone communications regarding the delay or possibly complete lack of work stemming from the Sprint business, totaling somewhere around three communications"; and (14) "[a]t the end of this time period, [Stone] communicated to [appellant] that Cable Tech could not employ any Field Service Technicians for that area as planned." Stone also stated in the affidavit that (1) "[d]uring all of [Stone's] communications with [appellant], [Stone] was physically present in Iowa"; and (2) defending this litigation in Ohio would burden Stone's professional obligations to Cable Tech. Lastly, Stone stated that (1) appellant moved to Ohio "even before responding to our offer of an independent contract relationship"; and (2) "[o]bviously, [appellant's] move to Ohio was not dependent on retaining employment with Cable Tech."

{¶ 6} Appellant filed a memorandum opposing appellees' motion to dismiss and attached copies of electronic mail communications between appellant and Stone. As an example, Stone sent a February 28, 2003 e-mail to appellant while appellant was in California and discussed the potential employment opportunity. Other electronic mail communications involved appellant, in Ohio, asking Stone when Cable Tech would start assigning work. The communications also denote Stone's responses to appellant's inquiries. In particular, in response to appellant's inquiries, on April 1, 2003, Stone told appellant that Cable Tech added

appellant to the dispatch list, and on April 2, 2003, Stone told appellant that his "official start date" is April 7, 2003, "although it may move forward if we have a dispatch between now and then." After appellant asked Stone why Cable Tech had not assigned him work as of April 10, 2003, Stone responded that appellant could either "exercise some patience" or "resign now and we'll find another tech from the resumes in the area." Lastly, in response to appellant's April 14, 2003 question about when he would get work-related supplies, Stone assured appellant that he would be receiving a "welcome kit."

{¶ 7} On December 9, 2004, the trial court granted appellees' motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Civ.R. 12(B)(2) and 12(B)(3) respectively. Thus, the trial court dismissed appellant's complaint.

{¶ 8} Appellant appeals, raising one assignment of error:

The trial court erred in finding that the Franklin County Court Of Common Pleas lacked jurisdiction over appellees.

{¶ 9} Appellant's single assignment of error concerns the trial court's decision to dismiss appellant's complaint. Appellant does not challenge the trial court's decision to grant appellees' Civ.R. 12(B)(3) motion to dismiss for improper venue, and, therefore, we will not address the trial court's dismissal for improper venue. See App.R. 12(A) and 16(A). Rather, appellant contends that the trial court erred by dismissing his complaint upon granting appellees' Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. However, we disagree with appellant's contentions.

{¶ 10} Once a defendant moves to dismiss for lack of personal jurisdiction, a plaintiff must establish that the trial court had personal jurisdiction over the defendant. *Robinson v. Koch Refining Co.* (June 17, 1999), Franklin App. No. 98AP–900, 1999 WL 394512; *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165. If the trial court determines personal jurisdiction without holding an evidentiary hearing, the trial court must "view allegations in the pleadings and the documentary evidence in a light most favorable" to the plaintiff and resolve "all reasonable competing inferences" in favor of the plaintiff. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541; *Giachetti* at 307, 14 OBR 371, 471 N.E.2d 165; *Robinson.* Without an evidentiary hearing, a plaintiff need establish only a prima facie showing of personal jurisdiction. *Giachetti* at 307, 14 OBR 371, 471 N.E.2d 165; *Robinson.* A prima facie showing exists if a plaintiff produces sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction. *Giachetti* at 307, 14 OBR 371, 471 N.E.2d 165; *Robinson.* If the plaintiff makes a prima facie showing of personal jurisdiction, the trial court shall not dismiss the complaint without holding an evidentiary hearing. *Giachetti* at 307,

14 OBR 371, 471 N.E.2d 165; *Robinson.* Lastly, personal jurisdiction is a question of law that we review de novo. *Kvinta v. Kvinta,* Franklin App. No. 02AP–836, 2003-Ohio-2884, 2003 WL 21291049, at ¶ 74; *Robinson.*

{¶ 11} When determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must (1) determine whether Ohio's long-arm statute and the applicable civil rule confer personal jurisdiction and, if so, (2) whether granting jurisdiction under the statute and rule comports with the defendant's due process rights under the Fourteenth Amendment to the United States Constitution. *Goldstein,* 70 Ohio St.3d at 235, 638 N.E.2d 541, citing *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048. Courts must engage in the two-step analysis because the long-arm statute does not give Ohio courts jurisdiction to the limits of the due process clause. Id. at 238, 638 N.E.2d 541, fn. 1.

{¶ 12} Ohio's long-arm statute, R.C. 2307.382, outlines specific activities by which a nonresident defendant comes within an Ohio court's personal jurisdiction. *U.S. Sprint,* 68 Ohio St.3d at 184, 624 N.E.2d 1048. Civ.R. 4.3(A) authorizes out-of-state service of process on a defendant to effectuate personal jurisdiction. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477. As such, R.C. 2307.382 and Civ.R. 4.3(A) are coextensive and "complement each other." *U.S. Sprint* at 184, 624 N.E.2d 1048, fn. 2, quoting *Kentucky Oaks Mall* at 75, 559 N.E.2d 477.

{¶ 13} Appellant first argues that the trial court had jurisdiction over appellees because they "transacted business" in Ohio. See R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1). R.C. 2307.382(A) provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state[.]

{¶ 14} Similarly, Civ.R. 4.3(A)(1) provides that a plaintiff may make service of process on a nonresident

who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state[.]

{¶ 15} As used in the above jurisdictional provisions, "transact" means "to prosecute negotiations; to carry on business; to have dealings." *Kentucky Oaks Mall,* 53 Ohio St.3d at 75, 559 N.E.2d 477, quoting Black's Law Dictionary (5 Ed.1979) 1341. Thus, the term "transact"

embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." (Emphasis deleted.) Id. Accordingly, as used in R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), "[t]ransacting any business in this state" connotes a broad statement of jurisdiction. *Kentucky Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477. Therefore, cases involving whether a nonresident defendant "transacted business" in Ohio " 'have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted.' " *U.S. Sprint*, 68 Ohio St.3d at 185, 624 N.E.2d 1048, quoting 22 Ohio Jurisprudence 3d (1980) 430, Courts and Judges, Section 280. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *U.S. Sprint* at 185, 624 N.E.2d 1048.

{¶ 16} Here, appellant relies on *U.S. Sprint* to assert that the trial court had jurisdiction over appellees for their "transacting business in Ohio." In *U.S. Sprint*, the plaintiff, U.S. Sprint Communications ("U.S. Sprint"), sued Mr. K's Foods, Inc. ("Mr. K's"), in an Ohio trial court, although neither party was headquartered in Ohio. Mr. K's, located in Buffalo, New York, manufactured pizza products and cookies for wholesale distribution and home delivery and generated its sales through telemarketing. Mr. K's made telemarketing calls to prospective New York customers through its New York office and in other states through independent distributors. In Ohio, Mr. K's worked with two distributors: (1) Mr. K's Distribution and Sales of Cleveland, Inc., and (2) Mr. K's Distribution and Sales of Columbus, Inc.

{¶ 17} U.S. Sprint sued Mr. K's to recover for unpaid long-distance telephone service on 17 accounts. Six accounts were located in Ohio, one in Pennsylvania, and the remaining ten in New York.

{¶ 18} The Ohio Supreme Court concluded that Mr. K's was "transacting business" in Ohio under the long-arm statute. Id., 68 Ohio St.3d at 185, 624 N.E.2d 1048. The court noted that Mr. K's frequently used the U.S. Sprint long-distance telephone service to make long-distance calls to Ohio to sell its products on behalf of its home delivery division. The court also recognized that Mr. K's Ohio independent distributors used the U.S. Sprint long-distance phone service to place orders with Mr. K's for pizza and cookies to be sold in Ohio. Thus, having concluded that Mr. K's was "transacting business" in Ohio, the court held that Ohio's long-arm statute conferred jurisdiction over Mr. K's in regard to U.S. Sprint's claims pertaining to the Ohio long-distance accounts. Because the trial court had personal jurisdiction over Mr. K's under the long-arm statute, the court also held that the trial court had jurisdiction over Mr. K's in regard to the non-

Ohio long-distance accounts because the Ohio Rules of Civil Procedure and constitutional due process guarantees allowed joinder of the non-Ohio claims. Id., citing Civ.R. 18(A).

{¶ 19} However, appellant's reliance on *U.S. Sprint* is misplaced. In *U.S. Sprint*, the Ohio Supreme Court concluded that personal jurisdiction under the long-arm statute existed over Mr. K's because Mr. K's transacted business in Ohio by using U.S. Sprint long-distance accounts to conduct business in Ohio and to take orders from its Ohio independent distributors for goods to be sold in Ohio. Here, the transactions that appellant claimed induced him to move to Ohio did not take place in Ohio. Rather, appellant was residing in California when an employment placement agency provided information about appellant to Iowa resident Stone and Iowa corporation Cable Tech. Likewise, appellant was living in California when Stone, in Iowa, interviewed appellant. Similarly, appellant was residing in California when the Iowa corporation offered the independent-contractor position.

{¶ 20} Although appellant communicated with Stone after appellant moved to Ohio, the record evinces that the communications primarily consisted of e-mails that appellant initiated. As noted below, such "unilateral activity" from appellant is insufficient for a court to confer jurisdiction over appellees. See *Gallert v. Courtaulds Packaging Co. Inc.* (S.D.Ind.1998), 4 F.Supp.2d 825, 830. Moreover, as Stone indicated in his affidavit, "[m]ost communication[s] that occurred between [appellant] and [Stone] were exchanged via electronic mail or telephone while [appellant] resid[ed] in California * * *."

{¶ 21} Appellant also points to business negotiations that Cable Tech had with Sprint to further allege jurisdiction under the "transacting business" prongs of the long-arm statute and rule. However, these negotiations are immaterial to our inquiry because the negotiations were with Sprint, a party not involved in this suit. See R.C. 2307.382(A) (establishing that a court exercises personal jurisdiction under the long-arm statute for causes of actions "arising from" acts enumerated in the statute); Civ.R. 4.3(A) (establishing that a plaintiff may make service of process on a nonresident who "has caused an event to occur out of which the claim that is the subject of the complaint arose" from acts enumerated in the rules of civil procedure); R.C. 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him").

{¶ 22} Accordingly, we conclude that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) did not confer jurisdiction over appellees. Next, appellant argues that the trial court had jurisdiction over appellees because they contracted to supply services or goods in Ohio. See R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2). R.C. 2307.382(A)(2) states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
* * *

(2) Contracting to supply services or goods in this state[.]

{¶ 23} Similarly, Civ.R. 4.3(A)(2) provides that a plaintiff may make service of process on a nonresident:

who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
* * *

(2) Contracting to supply services or goods in this state[.]

{¶ 24} To support his claim that the trial court had jurisdiction over appellees under the "[c]ontracting to supply services or goods" prongs in the long-arm statute and rule, appellant again points to negotiations between Cable Tech and Sprint for Cable Tech to provide phone-system services on behalf of Sprint in Ohio. However, as noted above, the negotiations are immaterial because Cable Tech engaged in the negotiations with Sprint, a nonparty, and appellees did not contract "to supply services or goods" to appellant in Ohio. See R.C. 2307.382(A) and (C); Civ.R. 4.3(A). Thus, we conclude that R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2) did not confer jurisdiction over appellees.

{¶ 25} Nonetheless, even if appellees' contacts were sufficient to confer jurisdiction under the long-arm statute and rule, we must still determine whether those contacts were sufficient under the Fourteenth Amendment due process clause to have allowed the trial court to exercise jurisdiction under the statute and rule. *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d 541; *U.S. Sprint*, 68 Ohio St.3d at 183–184, 624 N.E.2d 1048.

{¶ 26} "[T]he extent to which the reach of the long-arm statute is limited by due process is a question of federal law." *Scullin Steel Co. v. Natl. Ry. Utilization Corp.* (C.A.8, 1982), 676 F.2d 309, 311. The United States Supreme Court has held that in order for a state court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the state. *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490, quoting *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. The due process clause protects a nonresident defendant's liberty interest in not being subject to a court's judgment if the defendant has established no meaningful " 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *Internatl. Shoe* at 319, 66 S.Ct. 154, 90 L.Ed. 95.

{¶ 27} Under the due process clause, a court obtains either specific or general jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia v. Hall* (1984), 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404, fns. 8 and 9. Specific jurisdiction exists when a plaintiff's controversy is related to or arises out of the defendant's contact with the forum state. General jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit not arising out of or not related to the defendant's contacts with the forum state.

{¶ 28} We first consider specific jurisdiction, which depends on the " 'relationship among the defendant, the forum, and the litigation.' " *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868, 80 L.Ed.2d 404, quoting *Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683. In particular, a court examines whether the defendant "purposefully established minimum contacts within the forum State" and whether the "litigation results from alleged injuries that 'arise out of or relate to' those activities" creating "minimum contacts." *Burger King,* 471 U.S. at 472–473, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528. For purposes of specific jurisdiction, "minimum contacts" exist when the nonresident defendant's purposeful and related contacts "create a 'substantial connection' with the forum State." Id. at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528. Personal jurisdiction is proper under such circumstances because the defendant "should reasonably anticipate being haled into court" in the forum state. Id. at 474, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 29} If the court concludes that a defendant has established the requisite "minimum contacts" with the forum state under specific jurisdiction, the court next examines whether asserting personal jurisdiction over the defendant comports with " 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *Internatl. Shoe,* 326 U.S. at 320, 66 S.Ct. 154, 90 L.Ed. 95. In particular, the court evaluates: " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Burger King* at 477, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 30} In *Gallert,* 4 F.Supp.2d at 830, the United States District Court for the Southern District of Indiana held that the due process clause precluded it from exercising specific jurisdiction over nonresident defendants. In *Gallert,* the plaintiff sued Thatcher Plastic and its parent company, Courtaulds Packaging Company, for wrongful employment termination. Courtaulds was a West Virginia company, and Thatcher Plastic was headquartered in Illinois. The plaintiff

resided in Indiana and maintained a sales office in his Indiana home. Additionally, the plaintiff " 'had a facsimile machine and telephone in his residence that he used to communicate with' " Thatcher Plastic. Id. at 828. Moreover, the plaintiff had worked with Thatcher Plastic for more than 13 years as a sales representative, and the plaintiff had been responsible for selling in Indiana for more than five years.

{¶ 31} In concluding that it did not have specific jurisdiction over the defendants, the trial court noted that the plaintiff "was the Thatcher Plastic division's only employee in Indiana, and that Thatcher Plastic's sales in Indiana were not very significant." Id., 4 F.Supp.2d at 830. Moreover, the trial court noted that management made decisions in Illinois to hire and subsequently terminate the plaintiff's employment. Lastly, the trial court found insignificant to the specific-jurisdiction inquiry the communications between the parties. The trial court described the communications as "unilateral activity" that "cannot satisfy the requirement of contact with the forum State." Id., quoting *Nu–Way Systems v. Belmont Marketing* (C.A.7, 1980), 635 F.2d 617, 620.

{¶ 32} Here, like *Gallert*, the record establishes that appellees' decision to create and terminate the independent-contractor arrangement with appellant did not take place in Ohio, given that Stone was never physically in Ohio for business related to appellant's case, no Cable Tech representatives were in Ohio in matters related to appellant's case, and Cable Tech has never maintained an office in Ohio. As noted in *Gallert*, the place where appellees decided to hire and terminate appellant's employment is a relevant consideration in support of specific jurisdiction. *Gallert*, 4 F.Supp.2d at 830; see, also, *Charlesworth v. Marco Mfg. Co.* (N.D.Ind.1995), 878 F.Supp. 1196, 1201 (concluding that the trial court did not have specific jurisdiction over a nonresident defendant in a plaintiff's wrongful-employment-termination suit filed in an Indiana federal court by noting that the defendant made decisions in California to hire and terminate the plaintiff's employment).

{¶ 33} Additionally, we find insignificant to the specific jurisdiction inquiry that Stone, on behalf of Cable Tech, responded to appellant's "unilateral" electronic mail communications that appellant initiated while he was in Ohio. See *Gallert*, 4 F.Supp.2d at 830; see, also, *LAK, Inc. v. Deer Creek Enterprises* (C.A.6, 1989), 885 F.2d 1293, 1297, 1301 (examining specific jurisdiction on a breach-of-contract case and concluding that minimum contacts did not stem from the plaintiff's attorney originating telephone calls in the forum state to the nonresident defendant's attorney during pertinent contract negotiations). Similarly, we find it insignificant that Stone, on behalf of Cable Tech, exchanged "a few" telephone communications about the independent-contractor arrangement with appellant while appellant was in Ohio. We recognize that "[a] numerical count of the calls

* * * has no talismanic significance," but note that "[t]he use of interstate facilities such as the telephone and the mail is a 'secondary or ancillary' factor and 'cannot alone provide the "minimum contacts" required by due process * * *.' " *LAK, Inc.*, 885 F.2d at 1301, quoting *Scullin Steel Co.*, 676 F.2d at 314, and citing *Stuart v. Spademan* (C.A.5, 1985), 772 F.2d 1185, 1194. Given that the telephone communications merely constitute an "ancillary factor," and considering the other evidence in this case, we do not find the above telephone communications sufficient to establish the requisite "minimum contacts." *LAK, Inc.* at 1301. We also apply this "ancillary factor" rationale to further find insignificant to the specific jurisdiction inquiry appellant and Stone's electronic communications. Id.

{¶ 34} Lastly, other circumstances of appellant's case establish that appellees did not maintain sufficient "minimum contacts" with Ohio in regard to the independent-contractor arrangement they made with appellant. Specifically, an employment agency provided Cable Tech, an Iowa corporation with its principal place of business in Iowa, and Stone, an Iowa resident, information about appellant while appellant was a California resident. In addition, "[m]ost communication[s] that occurred between [appellant] and [Stone] were exchanged via electronic mail or telephone while [appellant] resid[ed] in California * * *.' " Similarly, Stone was in Iowa during all of his communications with appellant. Likewise, Stone interviewed appellant while appellant was residing in California, and appellant was still residing in California when Cable Tech offered the independent-contractor position. Furthermore, in *Gallert*, the defendants maintained only one Thatcher Plastic employee in the forum state, and, here, Cable Tech's business opportunity with Sprint "was not realized," and, considering appellant's complaint, Stone indicated to appellant that it could employ only one technician in Ohio.

{¶ 35} Thus, through the above evidence, and in light of *Gallert*, we conclude that appellees' contacts with Ohio in relation to the independent-contractor arrangement do not rise to the level of a " 'substantial connection' " with Ohio to allow Stone and Cable Tech to "reasonably anticipate being haled into court" in Ohio. *Burger King*, 471 U.S. at 474, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528. Accordingly, appellees did not "purposefully [establish] minimum contacts" in support of specific jurisdiction. See *Burger King* at 477, 105 S.Ct. 2174, 85 L.Ed.2d 528. Without the requisite "minimum contacts," our specific jurisdiction inquiry ends, and we need not examine whether asserting personal jurisdiction over appellees comports with " 'fair play and substantial justice.' " Cf. *Burger King* at 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether

the assertion of personal jurisdiction would comport with 'fair play and substantial justice' "). Because appellees did not establish the requisite "minimum contacts" in regard to the independent-contractor arrangement that they made with appellant, we conclude that the due process clause precluded the trial court from exercising personal jurisdiction over appellees through specific jurisdiction. *Burger King* at 477, 105 S.Ct. 2174, 85 L.Ed.2d 528; *Gallert,* 4 F.Supp.2d at 829–830.

{¶ 36} In arguing that the trial court had jurisdiction over appellees, appellant also points to contacts that appellees had with Ohio that do not relate to the independent-contractor arrangement. Specifically, appellant notes that Cable Tech has previously hired independent contractors to provide services in the Cleveland area on behalf of Sprint. Appellant also refers to Stone's statement that he has "not been in the state of Ohio in the last ten years." However, such nonrelated contacts are irrelevant to our inquiry because appellant bases his cause of action on the independent-contractor arrangement that appellant was to carry out in Ohio, the forum state, and, as a result, a specific-jurisdiction analysis applies rather than a general-jurisdiction analysis that would consider such nonrelated contacts. See *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868, 80 L.Ed.2d 404, fn. 8–9. Nonetheless, for the following reasons, we conclude that appellees' nonrelated contacts with Ohio did not evoke personal jurisdiction over them through general jurisdiction.

{¶ 37} A court may exercise general jurisdiction over a defendant who has "continuous and systematic" contacts with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404. General jurisdiction requires "a greater amount of contacts" than specific jurisdiction. *Charlesworth,* 878 F.Supp. at 1200. Under general jurisdiction, the contacts must be " 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.' " *Gallert,* 4 F.Supp.2d at 831, quoting *Internatl. Shoe,* 326 U.S. at 318, 66 S.Ct. 154, 90 L.Ed. 95.

{¶ 38} In *Helicopteros,* the plaintiffs instituted a wrongful-death action in a Texas state court against parties that included a Columbian corporation, Helicopteros Nacionales de Colombia ("Helicol"). The plaintiffs instituted the action after individuals died in a crash in Peru involving a helicopter that Helicol owned. The United States Supreme Court held that the Texas court did not have general jurisdiction over Helicol because Helicol did not have "continuous and systematic" contacts with Texas. Id., 466 U.S. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404. The court stated that "continuous and systematic" contacts did not stem from Helicol sending a representative to Texas to negotiate a joint venture, or from Helicol receiving from the agreed upon joint venture over $5 million in payments drawn

on a Texas bank account. Id. at 410–411, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404. In so concluding, the court noted that the representative made only one trip to Texas to negotiate the joint venture, and the court held that the check payment constituted a "unilateral activity" with no indication that Helicol ever requested that the checks be drawn on a Texas bank account. Id. at 416–417, 104 S.Ct. 1868, 80 L.Ed.2d 404, citing *Kulko v. California Superior Court* (1978), 436 U.S. 84, 93, 98 S.Ct. 1690, 56 L.Ed.2d 132. The court also rejected general jurisdiction despite Helicol's purchasing 80 percent of its helicopter fleet from a Texas company, or Helicol's purchasing $4 million in parts and accessories from a Texas company. The court reasoned that "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros* at 417, 104 S.Ct. 1868, 80 L.Ed.2d 404. Lastly, the court concluded that general jurisdiction did not stem from Helicol sending pilots, managers, and maintenance personnel to Texas for training. The court described the training as a "brief presence of Helicol employees in Texas" that did not amount to a "continuous and systematic" contact. Id. at 416, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404. In declining general jurisdiction, the court also emphasized that "Helicol does not have a place of business in Texas and never has been licensed to do business in the State" and that Helicol "never has maintained an office or establishment" in Texas. Id. at 411, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404.

{¶ 39} Here, Cable Tech has far fewer contacts with Ohio than did Helicol with Texas in *Helicopteros*. When, as appellant mentions, Cable Tech hired independent contractors for work in the Cleveland area, the work equated "to less than 25 total hours." Under *Helicopteros*, such brief presence in Ohio does not rise to the level of a "continuous and systematic" contact. Id., 466 U.S. at 416, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404. Additionally, Sprint, a non-Ohio-based company, paid for the independent-contractor work through its office in Kansas, demonstrating further disconnect from Ohio. We also recognize that, as in *Helicopteros*, Cable Tech has never been licensed to do business in Ohio and has never maintained an office in Ohio. Accordingly, pursuant to *Helicopteros*, Cable Tech lacks the ongoing contacts with Ohio that would rise to the level of "continuous and systematic." Id. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404.

{¶ 40} We also conclude that Stone lacks "continuous and systematic" contacts with Ohio. See *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404. Again, appellant refers to Stone's indication that he has "not been in the state of Ohio in the last ten years." As in *Helicopteros*, Stone's long-ago visit to Ohio merely amounts to a "brief presence," and does not equate to "continuous and systematic." Id. at 416, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404. Furthermore, Stone is an Iowa resident and has never been in Ohio on Cable Tech's behalf. Additionally, Stone was not involved in the limited services that Cable Tech

provided for Sprint in the Cleveland area, and we cannot apply such activities of Cable Tech to exert jurisdiction over Stone. See *Balance Dynamics Corp. v. Schmitt Industries, Inc.* (C.A.6, 2000), 204 F.3d 683, 698, quoting *Weller v. Cromwell Oil Co.* (C.A.6, 1974), 504 F.2d 927, 929 ("jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation").

{¶ 41} Lastly, appellees' contacts from this present action did not culminate in "continuous and systematic" contacts with Ohio, given Cable Tech's claim that the business opportunity with Sprint "was not realized." Cf. *Gallert*, 4 F.Supp.2d at 831–832, citing *Keeton v. Hustler Magazine, Inc.* (1984), 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (noting that "[c]ontacts related to the dispute, though alone insufficient for specific jurisdiction, may be considered along with other contacts in determining general jurisdiction" and holding that, although the trial court did not have specific jurisdiction over a defendant and its parent corporation, the court had general jurisdiction through the parent corporation's nonrelated contacts with the forum).

{¶ 42} Because neither Cable Tech nor Stone has maintained the high threshold for "continuous and systematic" contacts with Ohio, we conclude that the due process clause precluded the trial court from exercising personal jurisdiction over Cable Tech or Stone through general jurisdiction. See *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404; *Charlesworth*, 878 F.Supp. at 1200.

{¶ 43} Thus, the Fourteenth Amendment due process clause precluded the trial court from exercising such personal jurisdiction because appellees lack the requisite "minimum contacts" under either specific or general jurisdiction. See *World–Wide Volkswagen*, 444 U.S. at 291, 100 S.Ct. 559, 62 L.Ed.2d 490; *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528; *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404. Therefore, we conclude that the trial court did not err in finding that it lacked personal jurisdiction over appellees and in granting appellees' motion to dismiss for lack of jurisdiction. Therefore, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN, P.J., and McGRATH, J., concur.