[Cite as *Figley v. Ivex Protective Packaging, Inc.*, 2016-Ohio-3501.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**SHELBY COUNTY**

FRED M. FIGLEY III,

    PLAINTIFF-APPELLANT,                CASE NO.  17-16-02

    -AND-

OHIO BUREAU OF WORKERS'
COMPENSATION,

    PLAINTIFF-APPELLEE,

    v.                               **O P I N I O N**

IVEX PROTECTIVE
PACKAGING, INC., ET AL.,

    DEFENDANTS-APPELLEES.

**Appeal from Shelby County Common Pleas Court**
**Trial Court No. 13CV000062**

**Motion Denied; Judgment Affirmed**

**Date of Decision:   June 20, 2016**

**APPEARANCES:**

    *Paul W. Flowers* **for Appellant**

    *David J. Simko* **for Appellee, Ohio Bureau of Workers' Compensation**

    *Bradley L. Snyder* **for Appellee, Concept Convoyeur, Inc.**

**PRESTON, J.,**

{¶1} Plaintiff-appellant, Fred M. Figley III ("Figley"), appeals the January 4, 2016 judgment entry of the Shelby County Court of Common Pleas dismissing Figley's amended complaint as to defendant-appellee, Concept Convoyeur, Inc. ("Concept"). Figley also challenges on appeal the trial court's February 26, 2015 judgment entry denying Figley's motion for partial summary judgment and granting the motion for summary judgment of plaintiff-appellee, the Ohio Bureau of Workers' Compensation ("BWC"). For the reasons that follow, we affirm.

{¶2} This case arises from a workplace accident at defendant-appellee's, IVEX Protective Packaging, Inc. ("IVEX"), plant in Sidney, Ohio. Figley was operating a "bubble out bag machine" ("machine") when his hand became trapped, resulting in the loss of several of Figley's fingers. The machine's safety interlock device was bypassed, allowing IVEX employees operating the machine to access the internal mechanisms while the machine remained energized and operational. Concept designed and manufactured the machine and sold it to IVEX in Canada, with the understanding that the machine would be used in Illinois. IVEX subsequently closed its Illinois plant and transferred the machine to its Sidney plant.

{¶3} On March 27, 2013, Figley filed his complaint for personal injury against IVEX and the BWC. (Doc. No. 1). On April 19, 2013, the BWC filed an

answer and a motion "for realignment of the parties," requesting that it be realigned as a party plaintiff in the case and be allowed to file the complaint attached to its motion for realignment. (Doc. Nos. 11, 10). Figley filed a memorandum in opposition to the BWC's motion for realignment on April 29, 2013. (Doc. No. 18). On May 28, 2013, the trial court granted the BWC's motion for realignment, and the BWC filed its complaint. (Doc. Nos. 26, 25).

{¶4} On May 24, 2013 and June 27, 2013, IVEX filed answers to Figley's complaint and the BWC's complaint, respectively. (Doc. Nos. 24, 32).

{¶5} On February 24, 2014, IVEX filed a motion for summary judgment. (Doc. No. 70). On April 16, 2014, Figley filed a memorandum in opposition to IVEX's motion for summary judgment. (Doc. No. 103). IVEX filed a reply brief in support of its motion for summary judgment on May 7, 2014. (Doc. No. 109).

{¶6} Meanwhile, on March 3, 2014, with leave of court, Figley filed an amended complaint for personal injury, adding Concept as a defendant. (Doc. No. 79). Figley's amended complaint included claims: (1) against IVEX for workplace intentional tort, "common law claims," civil battery, and intentional infliction of serious emotional distress; (2) against the BWC for a declaratory judgment that R.C. 4123.93 and 4123.931—the statutes governing subrogation rights related to the payment of workers' compensation and benefits—do not apply or, alternatively, if R.C. 4123.93 and 4123.931 do apply, a declaration as to

the BWC's subrogation rights; and (3) against Concept for product liability, breach of warranty, and negligence. (*See id.*). On March 17, 2014, IVEX filed an answer to Figley's amended complaint. (Doc. No. 86). Concept filed an answer to Figley's amended complaint on June 19, 2014. (Doc. No. 116). In its answer, Concept asserted the affirmative defense of lack of personal jurisdiction. (*See id.* at 10).

{¶7} While IVEX's motion for summary judgment was pending, Figley reached a settlement with IVEX in the total amount of $280,000.00. (*See* Doc. No. 127, Ex. A, ¶ 3). (*See also* Doc. No. 163).

{¶8} On October 6, 2014, Figley filed a motion for partial summary judgment as to his declaratory-judgment claim against the BWC. (Doc. No. 127). Specifically, Figley requested that declaratory judgment "be entered establishing that Plaintiff BWC is entitled to $11,465.58 with regard to Plaintiff Figley's settlement recovery from Defendant IVEX." (*Id.* at 12). On January 20, 2015, the BWC filed a combined motion for summary judgment and memorandum in opposition to Figley's motion for partial summary judgment. (Doc. No. 149). In its motion for summary judgment, the BWC proposed "two alternative methods for arriving at the amount of the subrogation interest" as to Figley's settlement with IVEX. (*Id.* at 9). On February 6, 2015, Figley filed a response to the BWC's

motion for summary judgment. (Doc. No. 155). On February 17, 2015, the BWC filed a reply in support of its motion for summary judgment. (Doc. No. 161).

{¶9} On February 26, 2015, the trial court filed a judgment entry in which it granted the BWC's motion for summary judgment and denied Figley's motion for partial summary judgment. (Doc. No. 163). In its judgment entry, the trial court concluded that, as to Figley's settlement with IVEX, the subrogation interest of the BWC is $292,944.56. (*Id.* at 6).

{¶10} On April 22, 2015, Figley and the BWC filed a "notice of dismissal with prejudice" of IVEX. (Doc. No. 167). That document stated, "Now come the parties [Figley], [the BWC,] and [IVEX] and advise the Court that they have settled and adjusted this matter among themselves." (*Id.*).

{¶11} On June 26, 2015, Concept filed a "motion to dismiss and/or for summary judgment." (Doc. No. 171). In that motion, Concept argued, among other things, that the trial court lacked personal jurisdiction over Concept. (*Id.* at 8). On October 9, 2015, Figley filed a memorandum in opposition to Concept's motion. (Doc. Nos. 185, 184). Concept filed a reply in support of its motion on November 2, 2015. (Doc. No. 190).

{¶12} On January 4, 2016, the trial court filed a judgment entry concluding that it did not have personal jurisdiction over Concept, granting Concept's motion, and dismissing Concept from the case. (Doc. No. 191).

{¶13} On January 13, 2016, Figley filed a notice of appeal. (Doc. No. 192). He raises two assignments of error for our review. We will address Figley's assignments of error in reverse order.

### Assignment of Error No. II

**A further legal error was committed when the trial court determined that personal jurisdiction could not be exercised over defendant-appellee, Concept Convoyeur, Inc. [Decision dated January 4, 2016]**

{¶14} In his second assignment of error, Figley argues that the trial court erred by concluding that it did not have personal jurisdiction over Concept, granting Concept's "motion to dismiss and/or for summary judgment," and dismissing the action against Concept. Specifically, Figley points out that there is no dispute that Concept understood that the machine would be used in Illinois. Therefore, Figley argues, "Concept should have appreciated, and undoubtedly did appreciate, that its customers would be moving their equipment across state lines as needed. If the foreign company did not want to be sued in the United States, it never should have done business with Defendant IVEX." (Appellant's Brief at 20).

{¶15} Concept captioned its motion as one "to dismiss and/or for summary judgment" under Civ.R. 12(B)(2) and Civ.R. 56. (Doc. No. 171). *See Reynolds v. HCR ManorCare, Inc.*, 9th Dist. Summit No. 27411, 2015-Ohio-2933, ¶ 9 (involving a "motion to dismiss pursuant to Civ.R. 12(B) and/or motion for partial

summary judgment"). At the time Concept filed its "motion to dismiss and/or for summary judgment," it already filed an answer to Figley's amended complaint. *See Reynolds* at ¶ 9. *See also Patton v. Risner*, 3d Dist. Wyandot No. 16-09-14, 2010-Ohio-191, ¶ 9 (noting that a motion raising a defense under Civ.R. 12(B) "'shall be made before pleading * * *,' i.e., before filing an answer"), quoting Civ.R. 12(B). While the trial court addressed Concept's motion as one "to dismiss or for summary judgment," "the motion and judgment could be construed as a motion for judgment on the pleadings" because Concept filed an answer before its motion. (Doc. No. 191); *Reynolds* at ¶ 9, citing *Savoy v. Kramer*, 9th Dist. Summit No. 27418, 2015-Ohio-437, ¶ 5. "Irrespective of how the motion is labeled, our standard of review would be de novo." *Reynolds* at ¶ 9, citing *Savoy* at ¶ 5. "As [no] party has raised this issue or discussed the propriety of the trial court's consideration of the motion as a motion to dismiss, for purposes of this appeal we will review the judgment as a ruling on a motion to dismiss." *Id.*

{¶16} "Once a defendant moves to dismiss a complaint for lack of personal jurisdiction under Civ.R. 12(B)(2), the burden shifts to the plaintiff to establish jurisdiction over the nonresident defendant." *Wedemeyer v. U.S.S. F.D.R (CV-42) Reunion Assoc.*, 3d Dist. Allen No. 1-09-57, 2010-Ohio-1502, ¶ 37, citing *Hercules Tire & Rubber Co. v. Murphy*, 133 Ohio App.3d 97, 100 (3d Dist.1999). "When a court determines personal jurisdiction without an evidentiary hearing, it

must 'view allegations in the pleadings and documentary evidence in the light most favorable to the non-moving party' and 'resolv[e] all reasonable competing inferences' in favor of the non-moving party." *Id.*, quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994). The plaintiff is required to make only a prima facie showing of personal jurisdiction when no evidentiary hearing is held. *Id.*, citing *Giachetti v. Holmes*, 14 Ohio App.3d 306, 307 (8th Dist.1984). "In order to make a prima facie showing of personal jurisdiction, 'the plaintiff must provide sufficient evidence to allow reasonable minds to conclude that personal jurisdiction exists over the defendant.'" *Id.*, quoting *Parshall v. PAID, Inc.*, 10th Dist. Franklin No. 07AP-1019, 2008-Ohio-3171, ¶ 9, citing *Goldstein* at 236. "Whether personal jurisdiction exists is a question of law that we review de novo." *Id.*, citing *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, ¶ 10 (10th Dist.).

{¶17} "Whether an Ohio court has personal jurisdiction over a nonresident defendant, depends upon: (1) whether R.C. 2307.382(A), Ohio's long-arm statute, and Civ.R. 4.3 permit the court to assert personal jurisdiction; and, if so, (2) whether bringing the defendant within the jurisdiction of the Ohio courts would violate traditional notions of fair play and substantial justice under the Due Process Clause." *Id.*, citing *Parshall* at ¶ 10, citing *Goldstein* at 235, citing *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio

St.3d 181, 183-184 (1994). "When a court decides that jurisdiction is improper under Ohio's long-arm statute, it need not address whether due-process requirements have been met." *Starks v. Choice Hotels Internatl.*, 175 Ohio App.3d 510, 2007-Ohio-1019, ¶ 10 (1st Dist.).

{¶18} R.C. 2307.382 sets forth "specific activities that allow Ohio courts to exert personal jurisdiction over a nonresident defendant." *Wedemeyer* at ¶ 39, citing *Parshall* at ¶ 11, citing *Joffe* at ¶ 12, citing *Mr. K's Foods, Inc.* at 184. "Civ.R. 4.3(A), which permits out-of-state service of process on a defendant to confer personal jurisdiction is coextensive with R.C. 2307.382, and the two provisions 'complement each other.'" *Id.*, citing *Parshall* at ¶ 12, citing *Joffe* at ¶ 12, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). "R.C. 2307.382 and Civ.R. 4.3(A) allow Ohio courts to exercise jurisdiction over nonresident defendants in causes of action arising from several enumerated circumstances," including a nonresident's "[t]ransacting any business in this state" and "[c]ontracting to supply services or goods in this state." *Cincinnati Equine v. Sandringham Farm*, 1st Dist. Hamilton No. C-150067, 2016-Ohio-803, ¶ 12; R.C. 2307.382(A)(1), (2); Civ.R. 4.3(A)(1), (2).

{¶19} Regarding R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), "[t]he Ohio Supreme Court has broadly defined 'transacting business' to include 'to prosecute negotiations; to carry on business; to have dealings.'" *Lucas v. P & L Paris Corp.*,

7th Dist. Mahoning No. 11-MA-104, 2012-Ohio-4357, ¶ 18, quoting *Kentucky Oaks Mall Co.* at 75, quoting *Black's Law Dictionary* 1341 (5th Ed.1979). "Because the definition is so broad, cases involving questions of what constitutes 'transacting business' have been resolved on highly particularized facts that do not lend themselves to generalization." *Id.* at ¶ 18, citing *Goldstein*, 70 Ohio St.3d at 236. Nevertheless, to fall within R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), "a nonresident's ties must 'create a "substantial connection" with the forum State.'" *Mr. K's Foods, Inc.* at 185, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985). The First District Court of Appeals "set out several useful factors to be considered when determining whether a foreign corporation has transacted business in Ohio including whether the foreign corporation '(1) initiated the business dealings, (2) participated in business negotiations, (3) ordered work to be performed in Ohio, and (4) remitted payments to or owed other obligations in Ohio.'" *Lucas* at ¶ 19, quoting *N. Am. Software, Inc. v. James I. Black & Co.*, 1st Dist. Hamilton No. C-100696, 2011-Ohio-3376, ¶ 15.

{¶20} Figley and Concept do not dispute the facts. The owners of Concept are Pierre Debien ("Pierre"), president of Concept, and Mathieu Debien ("Mathieu"), vice president of Concept. (Affidavit of Mathieu Debien ("M. Debien Aff."), ¶ 2, 4, Doc. No. 171, Ex. B). Concept is a Canadian corporation

located in Montreal, Quebec, Canada. (*Id.* at ¶ 3). Concept does not own or have an interest in any real property in the United States, nor is it registered to do business in any state in the United States. (*Id.* at ¶ 3, 6). Pierre and Mathieu have never been to Ohio for any business or non-business purpose. (*Id.* at ¶ 5). Concept has no agents or employees acting on its behalf in the United States. (*Id.* at ¶ 7).

{¶21} Approximately one year before Concept sold the machine to IVEX, Mathieu, at IVEX's request, traveled to IVEX's plant in Illinois to tour the plant and make production recommendations. (Deposition of Mathieu Debien ("M. Debien Depo.") at 8, 11-15, Doc. No. 178). The machine, which Concept manufactured and sold to IVEX approximately one year after Mathieu visited IVEX's Illinois plant, was unrelated to Mathieu's visit to the plant. (*Id.* at 14-15). Other than Mathieu's trip to IVEX's Illinois plant, no employee or agent of Concept has ever been physically present in the United States for any purpose related to Concept's business. (M. Debien Aff. at ¶ 8). Concept sold the machine to IVEX and shipped it to IVEX's Longueuil, Quebec, Canada location, knowing that it would be used in Illinois. (*Id.* at ¶ 18-19). Without Concept's knowledge, IVEX closed its Illinois plant and transferred the machine to its plant in Sidney, Ohio. (*Id.* at ¶ 19). IVEX contacted Mathieu to obtain replacement parts for the machine, at which point Concept learned that the machine had been moved to

Ohio. (*Id.* at ¶ 19-20). As a result of this communication, IVEX sent Concept a purchase order for the replacement parts; Concept manufactured them; Concept sent them to Sidney; and Concept invoiced IVEX's Sidney location for them. (*Id.* at ¶ 20, Ex. B-1). Aside from this replacement-parts transaction, Concept does not supply goods or services to Ohio. (*Id.* at ¶ 7, 17).

{¶22} Figley argues that the trial court has personal jurisdiction over Concept under the transacting-any-business circumstance of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) and the contracting-to-supply-services-or-goods circumstance of R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2). Figley's argument is based on his position that, because Concept sold the machine knowing that it would be used in Illinois, the trial court has personal jurisdiction over Concept because Concept knew, or should have known, that its equipment would be moved across state lines as needed. Figley does not argue in his brief that Concept's sending replacement parts to Sidney contributed to its "[t]ransacting any business in this state" or "[c]ontracting to supply services or goods in this state." Indeed, at oral argument, Figley's counsel agreed that the replacement-parts transaction is insufficient to allow an Ohio court to exercise personal jurisdiction over Concept. Nevertheless, even considering Concept's shipping replacement parts to Sidney, as well as the original sale of the machine from Concept to IVEX for use in Illinois, we conclude that there is not sufficient evidence in the record to allow reasonable

minds to conclude that personal jurisdiction exists over Concept under either R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) or R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2).

{¶23} As for R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), the evidence in the record in insufficient to establish a prima facie showing that Concept "transact[ed] any business in this state." Borrowing the factors analyzed by the First District in *James I. Black & Co.*, there is no indication in the record that Concept initiated business dealings in Ohio or any other state in the United States. *See James I. Black & Co.*, 2011-Ohio-3376, at ¶ 16; *Lucas*, 2012-Ohio-4357, at ¶ 20. It appears that IVEX initiated the business negotiations for the manufacture and sale of the machine. (*See* M. Debien Depo. at 67). After IVEX moved the machine to Sidney, it was IVEX that contacted Concept on one occasion to request replacement parts. Second, there is no indication in the record that the business negotiations surrounding the machine occurred anywhere other than in Canada and, possibly, Illinois. *See James I. Black & Co.* at ¶ 16; *Lucas* at ¶ 21. Third, Concept did not order any work to be performed in Ohio. Rather, the machine was manufactured and sold in Canada for use in Illinois. *See James I. Black & Co.* at ¶ 16; *Lucas* at ¶ 22. Fourth, Concept did not remit payments to or owe other obligations in Ohio, aside from a shipment of replacement parts to Sidney in exchange for payment from IVEX. *See James I. Black & Co.* at ¶ 16; *Lucas* at ¶

23. We hold that the particular facts of this case do not sufficiently demonstrate a prima facie showing that Concept possessed the "substantial connection" necessary to satisfy R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1). *See James I. Black & Co.* at ¶ 16; *Lucas* at ¶ 28.

{¶24} We likewise conclude that the evidence in the record is insufficient to establish a prima facie showing that Concept "contract[ed] to supply services or goods in this state" under R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2). There is no indication in the record that Concept supplied services or goods in Ohio, except for Concept shipping and accepting payment for the replacement parts that IVEX requested once the machine was in Sidney. As we stated above, Figley does not argue in his brief that this replacement-parts transaction satisfies R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2). In fact, it is unclear from Figley's brief exactly what conduct of Concept's he believes amounted to "contracting to supply services or goods in this state." Nevertheless, we conclude that this single transaction for replacement parts—which involved a one-page invoice written predominately in French and requiring payment in Canadian funds—does not satisfy R.C. 2307.382(A)(2) and Civ.R. 4.3(A)(2). *See Speck v. Mut. Serv. Life Ins. Co.*, 65 Ohio App.3d 812, 816 (8th Dist.1990), citing *U.S. Fire Ins. Co. v. Butler-Sparks Mach. Co.*, 8th Dist. Cuyahoga No. 47832, 1984 WL 148458, *2 (Sept. 20, 1984) (concluding "that the sale of a single piece of equipment to an

Ohio buyer under unspecified terms and conditions does not satisfy the 'minimum contacts' standard under subsection (A)(2)").

{¶25} In sum, although Figley was required to make only a prima facie showing of personal jurisdiction, there is not sufficient evidence in the record to allow reasonable minds to conclude that personal jurisdiction exists over Concept under Ohio's long-arm statute and Civ.R. 4.3. Because we conclude that jurisdiction is improper under Ohio's long-arm statute and Civ.R. 4.3, we need not address whether due-process requirements have been met. *See Starks*, 175 Ohio App.3d 510, 2007-Ohio-1019, at ¶ 10.

{¶26} Figley's second assignment of error is overruled.

## Assignment of Error No. I

**The trial judge erred, as a matter of law, by granting summary judgment and awarding plaintiff-appellee, Ohio Bureau of Workers Compensation, a subrogation claim that is $12,944.56 more than the settlement amount recovered [Decision Dated February 26, 2015]**

{¶27} In Figley's first assignment of error, he argues that the trial court misinterpreted and misapplied R.C. 4123.93 and 4123.931—the statutes governing the BWC's right of subrogation following its payment of compensation or benefits—in ruling on his motion for partial summary judgment and the BWC's motion for summary judgment. *See Smith v. Jones*, 175 Ohio App.3d 705, 2007-Ohio-6708, ¶ 15-20 (3d Dist.) (providing an overview of R.C. 4123.93 and

4123.931). Specifically, Figley argues that the trial court erroneously concluded that the BWC's subrogation interest in Figley's settlement with IVEX is $292,944.56—"$12,944.56 more than Plaintiff Figley actually received from Defendant IVEX." (Emphasis sic.) (Appellant's Brief at 13). Figley argues that, notwithstanding his settlement with IVEX, the trial court should have allowed a jury to decide his "demonstrated or proven damages" amount under R.C. 4123.93(F), which would be used to calculate his "uncompensated damages" and factor into the BWC's subrogation interest under R.C. 4123.931.

**{¶28}** Given our conclusion under Figley's second assignment of error that the trial court properly concluded that it did not have personal jurisdiction over Concept, and given that Figley, the BWC, and IVEX "settled and adjusted this matter among themselves" after the trial court ruled on Figley's motion for partial summary judgment and the BWC's motion for summary judgment, Figley's first assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c). *See Miklovic v. Shira*, 5th Dist. Knox No. 04-CA-27, 2005-Ohio-3252, ¶ 32 ("[A]ppellants attempt to claim error based upon the trial court's denial of motions entered by the trial court prior to the settlement agreement between the parties. Appellants waived the right to raise such issues when they entered the settlement agreement."); *Carbone v. Sericola*, 11th Dist. Trumbull No. 2013-T-0053, 2014-

Ohio-3526, ¶ 13 ("As appellant attacks the basis of granting summary judgment and not the settlement agreement itself, all of his issues are waived.").

**{¶29}** As a final matter, on April 22, 2016, the BWC filed a motion to supplement the appellate record under App.R. 9 with a copy of the settlement agreement reached between Figley, IVEX, and the BWC. In light of our determination of Figley's first and second assignments of error, concluding this appeal, the BWC's motion to supplement the appellate record is denied as moot. *See Leonard v. Georgesville Ctr., L.L.C.*, 10th Dist. Franklin No. 13AP-97, 2013-Ohio-5390, ¶ 28.

**{¶30}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Motion Denied;*
*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**