[Cite as *N. Am. Software, Inc. v. James I. Black & Co.*, 2011-Ohio-3376.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NORTH AMERICAN SOFTWARE, INC., | : | APPEAL NO. C-100696 |
| | | TRIAL NO. 10CV-05072 |
| | : | |
| Plaintiff-Appellant, | | *D E C I S I O N.* |
| | : | |
| vs. | | |
| | : | |
| JAMES I. BLACK & COMPANY, | | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  July 8, 2011

*Benjamin, Yocum & Heather, LLC*, and *Bradford C. Weber*, for Plaintiff-Appellant,

*Karen Comisar Prescott*, for Defendant-Appellee.

Please note: This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1}     Plaintiff-appellant North American Software, Inc., ("NAS") appeals from the judgment of the Hamilton County Municipal Court that dismissed its action against defendant-appellee James I. Black & Company ("JIBC") for lack of personal jurisdiction. For the following reasons, we affirm the judgment of the trial court.

**Factual and Procedural Background**

{¶2}     NAS is an Ohio corporation that has created and developed a line of commercial software known as the "Helper Series." This software assists financial professionals in collecting and organizing their client data, including contact information and portfolio statistics. NAS licenses its software nationwide from its only office, which is located in Cincinnati, Ohio.

{¶3}     JIBC is a Florida corporation that does business in Florida. According to NAS, JIBC purchased licenses in 1999 for three individuals to operate Helper Series software. Since then, the Florida company has obtained from NAS licenses for four additional users, along with several software updates. JIBC does not dispute that these transactions occurred, but maintains that NAS solicited the initial purchase.

{¶4}     NAS presented evidence that between 1999 and 2007, it had several contacts with JIBC. For instance, JIBC communicated with NAS at least 100 times by mail, email, and telephone, including calls to NAS's Cincinnati telephone number, which contains the local "513" area code. The nature of these communications, however, remains unclear. Also during this period, JIBC transmitted its clients'

information on five occasions to NAS by mail, email, and "File Transfer Protocol" for "data conversion and integration" into the Helper Series software.[1]

{¶5}    NAS alleges that in 2002, it mailed a software update to JIBC known as Version 4.6 that included a "click-wrap agreement." Essentially, when a user installed the program, he or she was prompted to accept the terms of a licensing agreement. NAS claims that JIBC, by accepting the terms of this agreement, agreed to pay NAS an annual fee both to operate the software and to receive technical support. The licensing agreement also revoked all previous licenses obtained by JIBC. To ensure compliance with the licensing agreement, the software was designed to stop functioning without temporary codes that NAS would provide from time to time. The agreement contained an Ohio choice-of-law provision, but no forum selection clause.

{¶6}    In its complaint, NAS claimed that in 2004, JIBC began failing to pay the total amount due under the agreement, resulting in an arrearage. NAS also alleged that since 2005, JIBC had been breaching the 2002 licensing agreement by operating a previous version of the Helper Series software without a license. NAS sought damages under theories of breach of contract and unjust enrichment, and the company also requested injunctive relief. The trial court dismissed the complaint for lack of personal jurisdiction without an evidentiary hearing, and this appeal followed.

### Assignment of Error

{¶7}    In its sole assignment of error, NAS asserts that the trial court erred in dismissing its complaint against JIBC for lack of personal jurisdiction. But before

---

[1] T.d. 10.

3

we consider this assignment of error, we must address whether NAS's claims belong in state court.

{¶8} "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject-matter, the court shall dismiss the action."[2] Although neither party raised this issue below or on appeal, it appears that at least some of NAS's claims may be preempted by the federal Copyright Act, falling within the exclusive jurisdiction of the federal courts.[3]

{¶9} Under the Copyright Act, whether a state claim is preempted depends on "(1) whether a work is fixed in a tangible medium of expression within the subject matter of copyright and (2) whether the rights addressed are equivalent to the exclusive copyright rights."[4] To survive a preemption challenge based on the equivalency of protected rights, the state law claim must contain an "extra element" which renders the state claim *"qualitatively* different from a copyright infringement claim."[5]

{¶10} We are satisfied that NAS's claims, at least insofar as they seek to enforce a promise to pay, contain an "extra element," and, therefore, do not fall within the exclusive jurisdiction of the federal courts.[6] Nevertheless, to the extent that the trial court had subject-matter jurisdiction, we hold that the court properly dismissed NAS's complaint for lack of personal jurisdiction over JIBC.

---

[2] Civ.R. 12(H)(3). See also *State v. Lomax*, 96 Ohio St.3d 318, 2002-Ohio-4453, 774 N.E.2d 249, at ¶17 ("Since subject-matter jurisdiction cannot be waived and may be raised by this court sua sponte, appellant's failure to raise this argument on appeal does not foreclose this court's authority to review the issue.").

[3] Section 1338(A), Title 28, U.S. Code. See also *Ritchie v. Williams* (C.A.6, 2005) 395 F.3d 283, 285 (observing that "federal law vests exclusive jurisdiction over * * * preempted copyright claims in the federal courts").

[4] *State v. Boyd*, 1st Dist. No. C-090550, 2010-Ohio-4313, at ¶8.

[5] *State v. Perry*, 83 Ohio St.3d 41, 43, 1998-Ohio-422, 697 N.E.2d 624, quoting *United States ex rel. Berge v. Bd. of Trustees of Univ. of Ala.* (C.A.4, 1997), 104 F.3d 1453, 1463 (emphasis in original).

[6] See *Wrench LLC v. Taco Bell Corp.* (C.A.6, 2001), 256 F.3d 446, 456.

**Standard of Review**

{¶11}   The issue of personal jurisdiction is a question of law that we review de novo.[7] Because the trial court decided the issue upon written submissions without an evidentiary hearing, NAS had to make only a prima facie showing of personal jurisdiction.[8] A plaintiff makes a prima facie showing by presenting sufficient evidence for reasonable minds to conclude that the trial court has jurisdiction.[9] "In making this determination, the court must 'view allegations in the pleadings and the documentary evidence in a light most favorable' to the plaintiff and resolv[e] all reasonable competing inferences in favor of the plaintiff.' "[10]

{¶12}   Whether an Ohio court has personal jurisdiction over a nonresident defendant involves a two-part inquiry. First, we must determine whether Ohio's long-arm statute, R.C. 2307.382, and its complementary civil rule, Civ.R. 4.3(A), confer jurisdiction. If so, we next must decide whether exercising jurisdiction comports with due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.[11]

**The Long-Arm Statute and Complementary Civil Rule**

{¶13}   R.C. 2307.382 and Civ.R. 4.3(A) enable Ohio courts to exercise jurisdiction over nonresident defendants in causes of action arising from several enumerated circumstances, including a nonresident's "[t]ransacting any business in this state."[12] Courts have construed this phrase broadly to mean not only "to

---

[7] *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶27.
[8] Id., citing *Fallang v. Hickey* (1988) 40 Ohio St.3d 106, 107, 532 N.E.2d 117.
[9] *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, 839 N.E.2d 67, at ¶10; *Jentzen v. Lomma Enters., Inc.* (Jun. 8, 1994), 1st Dist. No. C-930346.
[10] *Kauffman*, supra, at ¶27, quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 1994-Ohio-229, 638 N.E.2d 541.
[11] *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184, 1994-Ohio-504, 624 N.E.2d 1048.
[12] R.C. 2307.382(A)(1); Civ.R. 4.3(A)(1).

contract," but also "to carry on business" and "to have dealings."[13] Cases interpreting this language have turned on highly particularized fact situations, which require case-by-case determinations.[14]

{¶14}   There is no dispute that NAS provided sufficient evidence to show that JIBC transacted business with the Ohio company. JIBC purchased licenses to operate the Helper Series software and paid an annual fee for the continued use of the software and for technical support. But whether JIBC transacted business with NAS is not the issue. Instead, we must determine whether JIBC's activities amounted to transacting business *in Ohio*.

{¶15}   This inquiry turns on whether JIBC's activities created a "substantial connection" with Ohio.[15] In resolving this question, courts have considered several factors, including, but not limited to, whether the nonresident (1) initiated the business dealings,[16] (2) participated in business negotiations,[17] (3) ordered work to be performed in Ohio,[18] and (4) remitted payments to or owed other obligations in Ohio.[19]

{¶16}   These and other factors demonstrate that JIBC did not transact business in Ohio. For example, NAS solicited the initial contact. In addition, NAS has provided no evidence that JIBC actively negotiated the terms of any agreement between the parties. Although NAS claims that JIBC communicated with NAS over

---

[13] *Goldstein*, supra, at 236.
[14] *U.S. Sprint Communications*, supra, at 185.
[15] *Bufold v. Von Wilhendorf, LLC*, 12th Dist No. CA2006-02-022, 2007-Ohio-347, at ¶12, citing *U.S. Sprint Communications*, supra, at 185.
[16] *Barnabas Consulting, Ltd. v. Riverside Health Sys.*, 10th Dist. No. 07AP-1014, 2008-Ohio-3287, at ¶15.
[17] *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990) 53 Ohio St.3d 73, 75-76, 559 N.E.2d 477.
[18] *Star Seal of Ohio, Inc. v. Tri State Pavement Supplies, LLC*, 10th Dist. No. 09AP-969, 2010-Ohio-2324, at ¶17.
[19] *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App.3d 634, 2005-Ohio-1945, 828 N.E.2d 205, at ¶14; *Hammill Mfg. Co. v. Quality Rubber Prods., Inc.*, (1992) 82 Ohio App.3d 369, 374, 612 N.E.2d 472.

100 times, the nature of these communications and how they relate to the current controversy remain unclear. We recognize that JIBC transmitted its client data to NAS five times for integration into the Helper Series software by NAS's Cincinnati employees, and that JIBC sent payments to NAS's Cincinnati office. Nevertheless, we hold that these contacts, under the totality of the circumstances, did not create a substantial enough connection with Ohio to demonstrate that JIBC had transacted business in this state. Therefore, R.C. 2307.382(A)(1) does not provide a basis for asserting personal jurisdiction over JIBC.

{¶17} In the alternative, NAS argues that jurisdiction is proper under R.C. 2307.382(A)(3) and (A)(4).[20] These provisions extend the state's long-arm jurisdiction to causes of action that arise from a nonresident's "[c]ausing tortious injury by an act or omission in this state"[21] and "[c]ausing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."[22]

{¶18} Although NAS did not specifically assert a tort claim in its complaint, the company argues that it essentially raised such a claim when it alleged software piracy. We are not persuaded. Assuming that NAS had properly raised a tort claim and that the trial court had subject-matter jurisdiction over it, NAS has not shown that the tort was caused by an act or omission by JIBC in Ohio or that JIBC regularly does business in this state. Therefore, R.C. 2307.382(A)(3) and (A)(4) also do not provide a basis for asserting personal jurisdiction over JIBC.

---

[20] See also Civ.R. 4.3(A)(3) and (A)(4).
[21] R.C. 2307.382(A)(3); Civ.R. 4.3(A)(3).
[22] R.C. 2307.382(A)(4); Civ.R. 4.3(A)(4).

**Due Process**

{¶19}   We further hold that an Ohio court's exercise of personal jurisdiction over JIBC in this case would not comport with due process of law under the United States Constitution. "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which that individual has not established meaningful contacts, ties, or relations."[23]

{¶20}   The United States Supreme Court has held that a state may only assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[24] In doing so, a state may exercise either general or specific jurisdiction, "depending on the nature of the contacts that the defendant has with the forum state."[25] "General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[26] Specific jurisdiction applies when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."[27]

{¶21}   NAS does not contend that general jurisdiction is proper over JIBC. Instead, the company maintains that its causes of action arise out of the JIBC's contacts with Ohio. In deciding whether the exercise of specific jurisdiction is proper,

---

[23] *Nat'l City Commercial Capital Co., LLC v. FOC Financial Ltd. Partnership*, 1st Dist. No C-080283, 2008-Ohio-6834, at ¶14, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472, 105 S.Ct. 2174.
[24] *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339.
[25] *Kauffman*, supra, at ¶46.
[26] Id., quoting *Bird v. Parsons* (C.A.6, 2002), 289 F.3d 865, 873.
[27] Id. at ¶47, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984), 466 U.S. 408, 414, 104 S.Ct. 1868, fn. 8.

8

the Ohio Supreme Court has employed the three-part test articulated by the United States Court of Appeals for the Sixth Circuit in *Southern Machine Company v. Mohasco Industries, Inc.*[28] "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[29]

{¶22}    The first *Southern Machine* factor considers whether the nonresident purposefully availed himself or herself of the privilege of acting in the forum state or causing a consequence in the forum state. In *Burger King v. Rudzewicz*, the United States Supreme Court explained: "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[30]

---

[28] Id. at ¶50, citing *Southern Machine Co. v. Mohasco Indus., Inc.*, (C.A.6, 1968), 401 F.2d 374, 381.
[29] *Kauffman*, supra, at ¶49, quoting *Bird*, supra, at 874.
[30] *Burger King*, supra, at 475-476 (internal citations omitted).

{¶23} We have already held that JIBC's dealings with NAS did not create a substantial connection with Ohio. NAS solicited the initial contact with JIBC, and there is no evidence that JIBC actively negotiated the terms of any agreement between the parties. Again we note that JIBC transmitted its client data to NAS on five occasions for integration into the Helper Series software and remitted payments to the Cincinnati office. Although JIBC agreed to an Ohio choice-of-law provision in the 2002 licensing agreement, it did not select an Ohio forum for any dispute arising out of that agreement.[31] On balance, JIBC's relationship with NAS was not active enough to constitute a substantial connection with Ohio. Therefore, we hold that the first *Southern Machine* factor has not been met.

{¶24} The second *Southern Machine* factor asks whether NAS's claims arose from JIBC's Ohio contacts. The Ohio Supreme Court has explained that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."[32] Although this suit arises from JIBC's contacts with NAS, it does not arise from JIBC's contacts with Ohio. Therefore, this factor has also not been met.

{¶25} The third and final *Southern Machine* factor considers whether the acts of the nonresident defendant or consequences caused by that defendant had a substantial connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Several factors are relevant to this "reasonableness inquiry."[33] They include: "(1) the burden on the defendant; (2) the interest of the

---

[31] See *LaFarge North American, Inc. v. Forbes*, 11th Dist. No. 2008-T-0034, 2008-Ohio-5864, at ¶25 ("[A] choice of law provision is insufficient to establish sufficient contacts in the forum state. It is merely a factor to be considered.").
[32] *Kauffman*, supra, at ¶70, quoting *CompuServe, Inc. v. Patterson* (C.A.6, 1996) 89 F.3d 1257, 1267.
[33] Id. at ¶72.

forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy."[34]

{¶26} Although we recognize Ohio's strong interest in protecting the business interests of its residents, we hold that, on balance, these factors weigh against the assertion of personal jurisdiction over JIBC in this case, particularly in light of the company's passive relationship with NAS.[35]

### Conclusion

{¶27} An Ohio court's exercise of personal jurisdiction over JIBC in this case would comport neither with Ohio's long-arm statute and complementary civil rule, nor the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, we overrule NAS's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

HILDEBRANDT, J., concurs.
FISCHER, J., concurs in part and dissents in part.

FISCHER, J., concurring in part and dissenting in part.

{¶28} While I concur in the majority's analysis and decision regarding subject-matter jurisdiction, because I believe that the record in this case supports the exercise of personal jurisdiction over the nonresident party, I respectfully dissent from that part of the majority's decision.

{¶29} R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) support the exercise of personal jurisdiction over a nonresident defendant in causes of action arising from the nonresident's "[t]ransacting any business in this state." Whether a nonresident

---

[34] *Intera Corp. v. Henderson* (C.A.6, 2005), 428 F.3d 605, 618.
[35] See *Culp v. Polytechnic Inst. of New York* (1982), 7 Ohio App.3d 352, 355, 455 N.E.2d 698.

has transacted business in Ohio depends on whether the nonresident has created a "substantial connection" with this state.[36] Having thoroughly reviewed the record, as well as taken into account the United States Supreme Court opinions like and related to *Burger King* and the applicable decisions of the Ohio Supreme Court, I believe that JIBC's numerous contacts with NAS during their multi-year, business-to-business relationship established such a connection.

{¶30} The Ohio Supreme Court's reasoning in *Kentucky Oaks Mall Company v. Mitchell's Formal Wear, Inc.*,[37] is particularly instructive. In that case, the court unanimously held that a nonresident commercial lessee had 'transacted business' in Ohio—even though it had maintained no physical presence in Ohio—when the nonresident lessee had merely (1) negotiated a lease for some Kentucky real estate via telephone contact to Ohio, (2) mailed a signed lease to Ohio, and (3) become obligated to remit payments to an Ohio lessor.[38] The multiple contacts in the case at bar far exceed the minimal contacts found in the *Kentucky Oaks Mall* case.

{¶31} Our case has many remarkable similarities to *Kentucky Oaks Mall*. The *Kentucky Oaks Mall* lessee entered a lease with an Ohio lessor to use the lessor's real property in Kentucky; and here, JIBC purchased temporary commercial licenses—which are in effect 'leases' of intellectual property—from an Ohio licensor to use the licensor's intangible property in Florida. In addition, just like the *Kentucky*

---

[36] *Bufold*, supra, at ¶12, citing *U.S. Sprint Communications*, supra, at 185.
[37] Supra.
[38] Id. at 75-76 (noting that a nonresident defendant need not maintain a physical presence in Ohio to transact business in Ohio). See also *Hammill Mfg. Co. v. Quality Rubber Prods., Inc.*, supra, (holding that a commercial nonresident defendant had transacted business in Ohio by negotiating the purchase of machinery from an Ohio manufacturer, ordering the Ohio-built machine, and sending payments to the Ohio company); *Cincinnati Art Galleries v. Fatzie* (1990), 70 Ohio App.3d 696, 698-699, 591 N.E.2d 1336 (holding that a nonresident defendant had transacted business in Ohio by negotiating with an Ohio resident by mail and phone contact for the sale of a painting and sending that painting to the Ohio resident).

*Oaks Mall* lessee, JIBC owed payments to be made in Ohio, and in fact JIBC made some payments to NAS in Ohio.

{¶32} And although it appears that JIBC did not negotiate the terms of the 2002 licensing agreement, so many other and more significant factors establish that company's substantial connection with Ohio. For example, JIBC (1) specifically agreed to an **Ohio** choice-of-law clause; (2) communicated directly with NAS over 100 times by mail, email, and telephone seeking services from NAS's employees and operations in **Ohio**; (3) repeatedly and purposefully obtained technical support from NAS's employees in **Ohio**; (4) unilaterally chose ["purposefully availed"] to send JIBC's own client databases, its own confidential commercial property, to NAS in **Ohio** on five separate occasions; (5) on each of those five occasions JIBC sought NAS employees'—whom JIBC knew were working in **Ohio**—services to perform coding and other highly technical integration services on JIBC's commercial property so that the NAS Helper Series software would operate properly; and (5) repeatedly sent some payments to NAS in **Ohio**.

{¶33} This record on its own, and especially when construed most favorably to the plaintiff, provides more than ample evidence for reasonable minds to conclude that an Ohio court can assert personal jurisdiction over JIBC as to claims arising out of that specific commercial relationship under R.C. 2307.382(A)(1) and Civ.R. 4.3(A).[39] To hold otherwise would deprive Ohio residents of a convenient forum for disputes with nonresidents who have purposely directed their commercial

---

[39] See R.C. 2307.382(C).

activity toward this state. This may deter new businesses from incorporating or locating in Ohio to the detriment of this state and its citizens.[40]

{¶34} In addition, the exercise of personal jurisdiction over JIBC would not offend due process of law. The relationship between NAS and JIBC was not that of a business-passive consumer; the facts here do not reveal a random individual consumer occasionally downloading a movie from a fortuitous, nonresident content provider. Both parties are active commercial entities and JIBC purposefully availed itself of NAS's Ohio-located intellectual property and services. In effect, the Ohioan brought in commercial revenues by the licensing and servicing of the nonresident's commercial property; the nonresident, similarly, brought in commercial revenues by the utilization of the Ohioan's licenses and services performed in Ohio for that nonresident. Hence, although initiated by NAS, these two parties maintained a longstanding relationship in which they both deliberately and repeatedly engaged in a series of commercial interactions with each other, for their mutual commercial benefits. Although JIBC ultimately enjoyed the benefit of NAS's services in Florida, JIBC knew that when it requested that NAS integrate its client databases with the Helper Series software, those services would be, and repeatedly were, performed in Ohio. JIBC actively and repeatedly sought those services to further its commercial enterprise.

{¶35} NAS's relationship with JIBC was not unilateral, and JIBC's numerous contacts with NAS were not random, fortuitous, or attenuated.[41] Moreover, by specifically agreeing that Ohio's laws would govern their 2002

---

[40] As recently reiterated by the United States Supreme Court, under our federal structure, Ohio competes for "a mobile citizenry." *Bond v. United States* (2011), 564 U.S. ___, ___ S.Ct. ___, No. 09-1227, citing *Gregory v. Ashcroft* (1991), 501 U.S. 542, 548, 111 S. Ct. 2395.

[41] See *Burger King*, supra, at 480. See also *Air Products & Controls, Inc. v. Safetech Internatl., Inc.* (C.A.6, 2007), 503 F.3d 544, 551.

licensing agreement, JIBC further reinforced its purposeful availment, its "deliberate affiliation," with Ohio.[42] Such a business connection is meaningful, with continuous contacts and ties. Thus, under both Ohio law and the United States Constitution, JIBC could reasonably anticipate and easily foresee being brought before a court in this state.[43]

{¶36}   As for another factor, NAS's claims directly and specifically arise from JIBC's contacts with Ohio, for NAS seeks payment for some services rendered by it in Ohio to a Florida company on multiple occasions.[44] As the lawsuit is based upon this specific relationship, this is yet another factor in favor of personal jurisdiction here in Ohio.

{¶37}   Finally, it would be reasonable for an Ohio court to exercise personal jurisdiction over JIBC in this case.[45] The United States Supreme Court has recognized that states like Ohio have a " 'manifest' interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."[46] While I recognize that requiring JIBC to litigate this matter in Ohio might be slightly more burdensome than litigating in Florida, on balance, and in light of the totality of the specific and multiple contacts described above, I believe that Ohio's exercise of personal jurisdiction over JIBC would be reasonable.[47]

{¶38}   For these reasons, I respectfully dissent in part.

Please Note:
        The court has recorded its own entry this date.

---

[42] *Burger King*, supra, at 482.
[43] *Kentucky Oaks Mall*, supra, at 77.
[44] See *Kauffman*, supra, at ¶71.
[45] Id. at ¶ 72.
[46] *Burger King*, supra, at 473.
[47] *Kauffman*, supra, at ¶¶72-73.