[Cite as *Timekeeping Sys., Inc. v. Safety Protection Universal Ltd.*, 2013-Ohio-3919.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99714**

# TIMEKEEPING SYSTEMS, INC.

PLAINTIFF-APPELLANT

vs.

# SAFETY PROTECTION UNIVERSAL LIMITED, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART, REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-754018

**BEFORE:** E.T. Gallagher, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 12, 2013

**ATTORNEYS FOR APPELLANT**

Louis J. Licata
Jody Perkins Ryan
Licata & Toerek
6480 Rockside Woods Blvd., South
Suite 180
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEES**

David M. Cuppage
Margaret M. Metzinger
Climaco, Wilcox, Peca, Tarantino & Garofoli
55 Public Square, Suite 1950
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Timekeeping Systems, Inc. ("TKS"), appeals from a judgment dismissing defendant-appellee, Vera Oberlander (a.k.a. Vera Yat Kiu "Vera"), for lack of personal jurisdiction. We find some merit to the appeal and affirm in part and reverse in part and remand.

{¶2} In February 1996, TKS filed a complaint against defendants Telcom Services, Inc.; Stephen Oberlander, individually; R.W. Oberlander, individually; Helen Oblerlander, individually; and Security Products Unlimited ("SPU") for breach of contract and fraud. Prior to trial, TKS reached a settlement agreement with Telcom, SPU, Stephen Oberlander, and R.W. Oberlander. The agreement excluded defendant Helen Oberlander.

{¶3} In October 1998, TKS filed a new action against Telcom, SPU, Stephen Oberlander, and R.W. Oberlander for breach of the settlement agreement. TKS obtained a default judgment against the defendants and transferred the judgment to several jurisdictions throughout the United States. When collection efforts were unsuccessful, TKS filed a motion to revive and show cause, which the court granted. In October 2006, the trial court entered a revived judgment in the amount of $230,641.29, which represented the principal amount of the debt, interest, and attorney fees incurred in attempting to collect the debt.

**{¶4}** TKS transferred the revived judgment to foreign jurisdictions, located witnesses in Hong Kong, and took depositions. While searching for assets to satisfy its debt, TKS discovered that the defendants had allegedly concealed and transferred assets to avoid paying TKS's judgment. As a result, in April 2011, TKS filed the instant action against SPU, Safety Protection Universal ("SPU2"), and various individual defendants including, for the first time, Vera. The complaint, which was later amended, alleged various counts of fraud, tortious interference with TKS's business, conspiracy, conversion, and violations of Ohio's Uniform Fraudulent Conveyance Act.

**{¶5}** Vera is a citizen of the United Kingdom and a permanent resident of the United States residing in California. TKS failed to obtain service on Vera until April 2012, when it served her with notice by publication. TKS subsequently filed a motion for default judgment against her. Before the court ruled on the motion, Vera filed a motion to dismiss for lack of personal jurisdiction. The court denied Vera's motion because she failed to request leave to plead in violation of Civ.R. 6(B), and granted TKS's motion for default judgment.

**{¶6}** Vera later filed a motion to vacate the default judgment, which included a request for dismissal for lack of personal jurisdiction. She argued that the court lacked personal jurisdiction to enter judgment against her. The court vacated the default judgment but denied Vera's request for dismissal. At a subsequent pretrial, the court gave Vera leave "to answer or otherwise respond" to the complaint by October 31, 2012.

{¶7} Vera filed a timely second motion to dismiss or for a more definite statement. This time, the court granted the motion to dismiss, explaining that TKS failed to demonstrate a prima facie showing that the court had personal jurisdiction over Vera. TKS now appeals and raises three assignments of error.

## Default Judgment

{¶8} In its first assignment of error, TKS argues the trial court erred by vacating its default judgment against Vera. It contends the court lacked authority to vacate the default judgment, because Vera failed to file a request for leave to plead accompanied by a showing of excusable neglect.

{¶9} In support of its argument, TKS relies on Civ.R. 12(A), 12(B), and 6(B). Civ.R. 12(A) requires that responsive pleadings be filed within 28 days of service on the defendant. Civ.R. 12(B) provides that a defendant may raise lack of personal jurisdiction as a defense by motion. As previously stated, Civ.R. 6(B) provides that a court may permit a defendant to file an untimely response to a complaint "where the failure to act was the result of excusable neglect." TKS also cites several cases for the proposition that a court abuses its discretion when it allows the defendant to file an untimely response to the complaint without a showing of excusable neglect.

{¶10} However, Vera's motion to vacate was not predicated on any civil rule, including Civ.R. 60(B), which governs most motions for relief from judgment. Instead, she argued that because the court lacked personal jurisdiction over her, the default

judgment was void, and the court lacked authority to require her to seek leave before filing a motion to dismiss.

{¶11} A court's authority to vacate a void judgment is not derived from the Rules of Civil Procedure, but rather is an inherent power possessed by courts. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St.3d 363, 368, 2000-Ohio-452, 721 N.E.2d 40. A judgment rendered by a court lacking jurisdiction is void ab initio, and may be vacated by virtue of the court's inherent power, independent of the grounds for vacation of judgments set forth in Civ.R. 60(B). *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraphs three and four of the syllabus; *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). Thus, Vera was not required to comply with either Civ.R. 6(B) or 60(B) before filing her motion to vacate the default judgment. *Patton* at paragraph three of the syllabus.

{¶12} Further, Vera's failure to file a timely response to the complaint did not waive the personal jurisdiction defense. In *Maryhew*, the Ohio Supreme Court held that if the defendant does not appear in the action, the defense is not waived for failing to object. *Id*. at 156-159 (defendant had not submitted to the court's jurisdiction, where submission to jurisdiction would have waived the issue of lack of personal jurisdiction). Therefore, Vera had the right to assert the personal jurisdiction defense in her motion to vacate the default judgment even though it was filed over 28 days from the date of service and she never requested leave to plead.

{¶13} The first assignment of error is overruled.

## Personal Jurisdiction

{¶14} In the second assignment of error, TKS argues the trial court erred in dismissing its complaint against Vera for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2). In the third assignment of error, TKS argues the trial court erred in concluding that TKS failed to establish a prima facie case that Vera's conduct brought her within the court's jurisdiction. We discuss these assigned errors together because they are interrelated.

{¶15} When a defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the trial court has personal jurisdiction over the defendant. *Giachetti v. Holmes*, 14 Ohio App.3d 306, 307, 471 N.E.2d 165 (8th Dist. 1984). Where, as here, the trial court determines personal jurisdiction without an evidentiary hearing, the plaintiff need only establish a prima facie showing of personal jurisdiction, which requires sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction. *Giachetti* at 307.

{¶16} In determining whether a motion to dismiss should be granted, we accept as true all factual allegations in the complaint. *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). The trial court may hold an evidentiary hearing and receive oral testimony or "hear" the matter on affidavits, depositions, and interrogatories. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27. If the court determines its jurisdiction without an evidentiary hearing, it must view allegations in the pleadings and documentary evidence in the light most

favorable to the nonmoving party. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994). In the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss. *Giachetti* at 307. Personal jurisdiction is a question of law that an appellate court reviews de novo. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 4-5.

{¶17} Determining whether a state court has personal jurisdiction over a nonresident defendant involves a two-step analysis. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183, 624 N.E.2d 1048 (1994). First, we must determine if Ohio's "long-arm" statute and civil rules apply to confer personal jurisdiction. *Id.* at 184. If so, we must determine if application of personal jurisdiction "would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *Id.*

{¶18} Ohio's long-arm statute is set forth in R.C. 2307.382. This statute authorizes personal jurisdiction of Ohio courts over out-of-state persons who take certain actions that create relationships with Ohio, including transacting business or causing tortious injury in this state. R.C. 2307.382(A)(1), (A)(3), and (A)(4); *see also* Civ.R. 4.3(A)(1), (A)(3), and (A)(4) (allowing service of process on nonresident defendants who transact business or cause tortious injury in Ohio). As relevant here, R.C. 2307.382(A)(6) states:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * *

[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

{¶19} The second step of the analysis involves due process. Due process is satisfied if a forum has either specific or general jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), fns. 8 and 9. TKS concedes that Ohio has no general jurisdiction over Vera. Specific jurisdiction exists if a defendant "purposefully established minimum contacts within the forum State" and if the "litigation results from alleged injuries that 'arise out of or relate to' those activities" creating "minimum contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

{¶20} To establish specific jurisdiction consistent with due process, this court has held that a plaintiff must demonstrate (1) that the defendant purposefully availed herself of the privilege of acting in the forum state or caused a consequence in the forum state, (2) the cause of action arose from the defendant's activities in the forum state, and (3) the acts of the defendant or consequences caused by the defendant had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Kerger v. Dentsply Internatl., Inc*., 8th Dist. Cuyahoga No. 94430, 2011-Ohio-84, ¶ 14, citing *Fritz-Rumer-Cooke Co., Inc. v. Todd & Sargent,* 10th Dist. Franklin No. 00AP-817, 2001 Ohio App. LEXIS 436 (Feb. 8, 2001).

**{¶21}** TKS argues that Vera's status, as a former shareholder and manager of SPU, constitutes sufficient minimum contacts with Ohio to make the exercise of jurisdiction over her reasonable. In support of its argument, TKS submitted her ex-husband Stephen Oberlander's ("Stephen") trial testimony from TKS's litigation against PCU in Hong Kong. Stephen testified that in April 2007, he knew that TKS would obtain a default judgment against SPU if SPU failed to assert a defense. He also admitted that, at that same time, SPU sold all of its assets to wind up the company. When asked whether he agrees that these actions were taken in an effort to avoid a possible judgment against SPU, he stated:

> Well, I, as I said, I had nothing to do with them closing down. If anybody was going to enter a defence [sic], it should have been my wife seeing how she's the one who was running the company.

He also stated that Vera was the "real decision-maker [sic] of SPU."

**{¶22}** TKS also submitted the transcript from Vera's debtor's examination dated April 15, 2004, in which she admits that she was running SPU at that time (tr. 22). In the affidavit she submitted in support of her motion to dismiss, Vera states that she divorced Stephen in 2005 and sold her 33 percent ownership interest in SPU2 "shortly after the divorce." However, as previously stated, Stephen testified that Vera was still running the company in April 2007, and the complaint alleges that Vera resigned as a director of SPU2 on July 7, 2008. The allegations and the evidence, viewed in a light most favorable to TKS, indicates that Vera was running SPU when it was wound up and that

she was running SPU2 for some time after it was formed in April 2007 (amended complaint ¶ 10).

{¶23} The amended complaint alleges that "the intermingling of the assets of SPU and SPU2 was prompted by an effort to avoid collection efforts of TKS which holds judgment against SPU and other named defendants, but not the newly formed SPU2." The amended complaint further alleges the defendants, including Vera and SPU2, tortiously interfered with TKS's business, conspired to defraud TKS, wrongfully converted TKS's property, and violated Ohio's Uniform Fraudulent Conveyance Act by concealing SPU's assets and reopening under the new name SPU2.

{¶24} Assuming, for purposes of a motion to dismiss, that all the allegations in the complaint are true, the complaint establishes that Vera purposely wound up SPU to conceal its assets with the intent to avoid satisfying an Ohio judgment. These actions are sufficient to bring Vera within the scope of Ohio's Long Arm Statute pursuant to R.C. 2307.382(A)(6). Further, personal jurisdiction over Vera, under the circumstances alleged, does not violate her right to due process. Although Vera has never been to Ohio and has never had any personal business in Ohio, she ran a business, which was a judgment debtor to an Ohio creditor. Her actions were not random; they were purposeful. She knowingly caused an injury in Ohio by concealing assets to avoid paying an Ohio judgment. Therefore, the trial court had personal jurisdiction over Vera. If the allegations in the complaint are untrue, Vera may still prevail on a motion for summary judgment or at trial.

**{¶25}** The second and third assignments of error are sustained.

**{¶26}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR