[Cite as *Fern Exposition Servs., L.L.C. v. Lenhof*, 2014-Ohio-3246.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| FERN EXPOSITION SERVICES, LLC, | : | APPEAL NO. C-130791 |
|  |  | TRIAL NO. A-1304963 |
| Plaintiff-Appellant, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
|  |  |  |
| DONALD LENHOF, JR., | : |  |
|  |  |  |
| Defendant-Appellee. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: July 25, 2014

*Keating, Muething & Klekamp, PLL, Steven C. Coffaro* and *Michael T. Cappel*, for Plaintiff-Appellant,

*Jacobs, Kleinman, Seibel & McNally, Mark J. Byrne* and *Kenneth F. Seibel*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**DeWine, Judge.**

{¶1}    This is an appeal from the dismissal of a lawsuit for lack of personal jurisdiction. An Ohio-based corporation sought to sue a nonresident former employee who had left to work for a competitor. As part of his duties as general manager of the corporation's branch in Charlotte, North Carolina, the employee communicated regularly with executives in Ohio and remotely accessed client information stored on the company's Ohio-based computer servers. The employee's work-related activities were supervised and controlled by executives from the corporation's headquarters in Cincinnati, and he attended a business meeting at the Cincinnati office on one occasion. Based on the employee's contacts with Ohio as part of this employment relationship, we conclude that the exercise of jurisdiction over the employee satisfies the requirements of Ohio's long-arm statute and is consistent with the Due Process Clause of the Fourteenth Amendment. Therefore, we reverse the judgment below.

### I. Contacts with Ohio

{¶2}    Fern Exposition Services, LLC ("Fern"), is a Delaware corporation headquartered in Cincinnati, Ohio, with satellite offices located throughout the country. Fern provides exposition, trade show, and corporate event-planning services. Donald Lenhof was born and raised in Cincinnati and has worked intermittently for Fern since 1980. Mr. Lenhof worked for Fern in Cincinnati from 1980-1990, and then in Columbus for a few months during 1993. Mr. Lenhof has not resided in Ohio since that time, but his two sons remained in Ohio after he moved away.

{¶3}    In 2000, Mr. Lenhof relocated to North Carolina to work for Fern in its Charlotte office. He was promoted to general manager of that branch in 2003. Between 2008 and 2013, Fern's general managers traveled to Northern Kentucky two to three

times each year to attend "managers' meetings" at the Cincinnati/Northern Kentucky International Airport. During his visits to the greater Cincinnati area, Mr. Lenhof would sometimes cross into Ohio to visit his son Chris, who still lived in Ohio. He also entered Ohio on three other occasions: twice in 2006 for personal reasons, and once in 2008 to attend a meeting at Fern's Cincinnati headquarters.

{¶4} As part of his duties as general manager, Mr. Lenhof participated in monthly business review telephone calls with executives in the Cincinnati office, including Fern's CEO, to report on Charlotte-based client accounts and discuss the branch's profit-and-loss statements. Fern also provided Mr. Lenhof with a laptop, so that he could access company data and customer files maintained on Fern's computer servers located in Ohio.

{¶5} One of the North Carolina events overseen by Mr. Lenhof was an auto show held annually by the Greater Charlotte Automobile Dealers Association ("Auto Dealers"). Mr. Lenhof testified that the Auto Dealers had contracted with Fern through 2015, but retained the right to cancel the contract with 30 days' notice for any reason. According to Mr. Lenhof, following the November 2012 show, Fern's CEO informed him that Fern intended to replace Mr. Lenhof as general manager. Mr. Lenhof formally resigned from his position on March 8, 2013, and his last day with the company was March 22.

{¶6} Sometime in late March, Mr. Lenhof accepted a position with Viper Tradeshow Services ("Viper")—a competitor of Fern—to oversee a new Viper branch in Charlotte. The Auto Dealers subsequently canceled their contract with Fern and began accepting bids from other companies, including Viper. In his deposition, Mr. Lenhof explained that he assisted the executive director of the Auto Dealers with drafting both a cancellation letter to Fern and a request for new proposals. The Auto Dealers ultimately

hired Viper to run the auto show. Based on these events, Fern sued Mr. Lenhof in Ohio, alleging tortious interference with contract and business relationships, misappropriation of trade secrets under both the Ohio and North Carolina uniform trade-secret laws, and breach of the nonsolicitation provisions of Mr. Lenhof's employment contract.

{¶7}   Mr. Lenhof filed a motion to dismiss for lack of personal jurisdiction under Civ.R. 12(B)(2). After reviewing the parties' briefs, affidavits and other materials in support of each party's position, as well as the deposition of Mr. Lenhof, the trial court granted the motion to dismiss. No evidentiary hearing was held.

{¶8}   Fern now appeals the trial court's dismissal of its complaint for lack of personal jurisdiction over Mr. Lenhof.

## II. The Burden of Proof Below

{¶9}   We review the issue of personal jurisdiction de novo. *N. Am. Software v. Black*, 1st Dist. Hamilton No. C-100696, 2011-Ohio-3376, ¶ 11. When a defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Id.* "The trial court may hold an evidentiary hearing and receive oral testimony or 'hear' the matter on the affidavits, depositions, and interrogatories." *Timekeeping Systems v. Safekeeping Protection Universal*, 8th Dist. Cuyahoga No. 99714, 2013-Ohio-3919, ¶ 16, citing *Kauffman Racing Equip. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2251, 930 N.E.2d 784, ¶ 27. The Ohio Supreme Court has explained that when the trial court "determines a Civ.R. 12(B)(2) motion to dismiss without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction." *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 11; *see Kauffman* at ¶ 27; *Black* at ¶ 11; *Timekeeping Systems* at ¶ 16.

4

{¶10} Mr. Lenhof contends, however, that Fern was required to establish personal jurisdiction by a preponderance of the evidence because the parties participated in some discovery and the facts pertaining to the jurisdictional issue are not disputed. In support of his position, Mr. Lenhof relies on a Sixth Circuit case, *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir.2012). The *Schneider* court affirmed the general rule that, where no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdiction. *Schneider* at 697. But the court also considered whether a prior Sixth Circuit case, *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir.1998), created an exception to that rule. In *Dean*, some discovery had been conducted at the trial level, but the trial court did not hold an evidentiary hearing. In holding that the prima facie standard applied because there had been no hearing, the *Dean* court indicated that a higher burden of proof would be appropriate "if the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery." *Dean* at 1272.

{¶11} In considering whether *Dean* created such an exception, the *Schneider* court noted that it could find no cases that had actually applied the exception. Instead, it found that courts had interpreted *Dean* to confirm the general rule that "the preponderance-of-the-evidence standard never applies in the absence of an evidentiary hearing." *Schneider* at 698, fn. 6, citing *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472 (6th Cir.2003). Ultimately, however, the *Schneider* court declined to decide the issue because it found that jurisdiction had been shown even under the more rigorous standard.

{¶12} Like the *Schneider* court, we are not aware of any Ohio case law applying the exception in *Dean*. Rather, the Ohio Supreme Court has made clear that in the absence of an evidentiary hearing on the jurisdictional issue, the plaintiff need only

make a prima facie showing that jurisdiction is proper. *See, e.g., Fraley*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, at ¶ 11; *Kauffman*, 126 Ohio St.3d 81, 2010-Ohio-2251, 930 N.E.2d 784, at ¶ 27; *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994). We see no reason to depart from that general rule. Thus, we conclude that Fern need only make a prima facie showing that jurisdiction is proper. In determining whether the plaintiff made a prima facie showing of jurisdiction, we must view the allegations in the pleadings and documentary evidence in the light most favorable to the plaintiff. *Fraley* at ¶ 11; *Black*, 1st Dist. Hamilton No. C-100696, 2011-Ohio-3376, at ¶ 11.

### III. The Exercise of Personal Jurisdiction

{¶13} Determining whether an Ohio court may exercise jurisdiction over a nonresident defendant involves a two-part inquiry. First, we must verify that the legislature has conferred jurisdiction pursuant to R.C. 2307.382, Ohio's long-arm statute. If it has, we must then determine whether the exercise of that jurisdiction would violate the defendant's due-process rights.

### A. The Long-Arm Statute Applies

{¶14} Fern contends that Ohio may exercise jurisdiction over Mr. Lenhof pursuant to R.C. 2307.382(A)(6), which provides:

A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a cause of action arising from the person's * * * [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

6

Thus, to invoke personal jurisdiction under that provision of the long-arm statute, "it need only be shown that [Mr. Lenhof] * * * caused tortious injury in this state, and that [Fern's] cause of action arose from such * * * tortious conduct." *Maui Toys v. Brown*, 7th Dist. Mahoning No. 12 MA 172, 2014-Ohio-583, ¶ 44.

{¶15}   Fern claims that Mr. Lenhof tortiously interfered with Fern's business relationships and misappropriated trade secrets in order to steal clients from Fern for Viper. Likewise, Fern asserts that Mr. Lenhof reasonably should have known that misuse of that information would cause injury to Fern in the form of lost revenues. In his deposition, Mr. Lenhof admitted that he knew that when the Charlotte Auto Dealers signed with Viper, it meant they were no longer contracting with Fern. He also admitted to helping the Auto Dealers draft a cancellation letter and request for proposals. If Mr. Lenhof did, in fact, commit the alleged tortious conduct, any injury to Fern would occur in Ohio, where that company is headquartered. Construing the evidence in the light most favorable to Fern, we conclude that Fern has alleged conduct that brings its claims within the reach of the long-arm statute.

## B. The Exercise of Jurisdiction Satisfies Due Process

{¶16}   The Due Process Clause of the Fourteenth Amendment imposes a limitation on the authority of a state to assert jurisdiction over a nonresident defendant. *Walden v. Fiore*, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014), citing *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). While the defendant's physical presence in the state is not a prerequisite for the exercise of jurisdiction, he must have sufficient "minimum contacts" with the forum state, such that the exercise of jurisdiction would not "offend 'traditional notions of fair play and substantial justice.' " *Walden* at 1121, citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in turn quoting

7

*Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Thus, the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations,' " and requires "fair warning" that a person's conduct may subject him to suit in a particular state. *Burger King v. Rudzewicz*, 471 U.S. 462, 471-472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), citing *Internatl. Shoe* at 319.

{¶17} Personal jurisdiction may be either general or specific, and the distinction turns on the nature of the defendant's contacts with the forum state. Fern contends that Mr. Lenhof's contacts with Ohio were sufficiently pervasive that Ohio may exercise either general or specific jurisdiction over him.

### i. General Jurisdiction

{¶18} For a court to exercise general jurisdiction over a nonresident defendant, the defendant must have "continuous and systematic" contacts with the forum state. *See Kauffman*, 126 Ohio St.3d 81, 2010-Ohio-2251, 930 N.E.2d 784, at ¶ 46, quoting *Bird v. Parsons*, 289 F.3d 865 (6th Cir.2002). These contacts must be " 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.' " *Joffe v. Cable Tech*, 163 Ohio App.3d 479, 2005-Ohio-4930, 839 N.E.2d 67, ¶ 37 (10th Dist.), quoting *Internatl. Shoe* at 318.

{¶19} The United States Supreme Court has recently revisited the issue of general jurisdiction in two cases: *Goodyear Dunlop Tires Operations v. Brown*, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), and *Daimler AG v. Bauman*, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). In both cases, the court clarified that the proper inquiry is whether a nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler* at

paragraph (C)(2) of the syllabus, quoting *Goodyear* at 2851. The court reaffirmed that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.*

{¶20} During his time as general manager of the Charlotte branch, Mr. Lenhof attended meetings in Northern Kentucky two to three times per year, and entered Ohio on an undetermined number of those occasions to visit his son. In addition to his trips to see his son, Mr. Lenhof physically entered Ohio on at least three more occasions: twice for personal reasons, and once for a meeting at Fern's headquarters in Cincinnati. Although he was born and raised in Ohio, he has not resided here since 1993. We simply do not think Mr. Lenhof's contacts rise to such a level that he could be considered "essentially at home" in Ohio at the time of the events at issue in this case. We, therefore, conclude that the trial court did not have general personal jurisdiction over Mr. Lenhof.

### ii. Specific Jurisdiction

{¶21} In the absence of general jurisdiction, a court may exercise specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, * * * and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]" *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528. To comport with due process, three criteria must be met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum

state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968).

{¶22} When evaluating whether summoning the defendant would violate the fundamental concerns of "fair play" and "substantial justice," we must apply "a constitutional standard defined in the broadest terms of 'general fairness' to the defendant." *Id.* at 382. "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King* at 474, citing *Internatl. Shoe*, 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95.

### a. Employee Purposefully Availed Himself of the Privilege of Acting in Ohio

{¶23} Mr. Lenhof has purposefully availed himself of the privilege of acting or causing a consequence in Ohio if he "should have reasonably foreseen that [his actions] would have consequences in that state." *See Southern Machine* at 382-383. While "random, fortuitous, or attenuated contacts" or the "unilateral activity of another party" are insufficient to meet the purposeful-availment requirement, a defendant has availed himself of the privilege of conducting business in a forum state where he "deliberately has engaged in significant activities within a State * * * or has created continuing obligations between himself and residents of the forum." *Burger King* at 475-476.

{¶24} In *Burger King*, the Florida-based Burger King corporation sought to sue a Michigan franchisee in Florida. The franchisee contended that Florida could not exercise jurisdiction because he was not a resident of Florida, the breach didn't occur there, and he had never even been to Florida—though his cofrancishee did attend a Burger King training session there on one occasion. The court disagreed, holding that the purposeful-availment requirement was satisfied because the

10

franchisee caused injury to Burger King in Florida, knew he had involved himself with a corporation based primarily in Florida, and engaged continuously in direct communications with the Florida corporation via mail and telephone.

{¶25} Another case presenting similar facts is *Internatl. Paper Co. v. Goldschmidt*, 872 F.Supp.2d 624 (S.D.Ohio 2012). The International Paper Company ("IPC") was incorporated in Delaware and had its principal place of business in Tennessee. A division of IPC called "xpedx" was headquartered in Ohio. Goldschmidt was a general manager of Strategic Paper Group, a subsidiary of xpedx. Although Goldschmidt lived in California and worked from there, the court held that he had availed himself of the privilege of conducting business in Ohio because he frequently communicated with his supervisor and other employees in Ohio, received confidential information from Ohio through a password-protected xpedx website, and visited Ohio twice in one year.

{¶26} Mr. Lenhof served as general manager from 2003-2013. During that time, he was physically present in Ohio for business purposes on only one known occasion. Nonetheless, Mr. Lenhof entered into an employment relationship with a corporation based in Ohio. His activities were supervised and controlled by executives in Ohio, he participated in monthly review meetings with executives in Ohio over the telephone, and he regularly accessed information on Fern's computer servers in Ohio. This was not unilateral activity on the part of Fern. Mr. Lenhof deliberately entered into a substantial and continuing relationship between himself and his Ohio-based employer, such that his actions would have consequences in Ohio. This is sufficient to satisfy the "purposeful availment" requirement.

{¶27} As the *Burger King* court explained: "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically*

11

enter the forum State. * * * [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

### b. The Claim Arose from Employee's Contacts with Ohio

{¶28} The Ohio Supreme Court has summed up the second *Southern Machine* requirement this way: " 'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.' " *Kauffman*, 126 Ohio St.3d 81, 2010-Ohio-2251, 930 N.E.2d 784, at ¶ 70, quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). The cause of action need not "formally 'arise from' defendant's contacts with the forum," as long as it has " 'a substantial connection with the defendant's in-state activities.' " *Kauffman* at ¶ 70, quoting *Third Natl. Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989), and *Southern Machine*, 401 F.2d at 384, fn. 27.

{¶29} The causes of action in this case are related to Mr. Lenhof's employment relationship with Fern, which was controlled and supervised from Fern's headquarters in Ohio. Fern claims that Mr. Lenhof interfered with its existing contractual relationships and used confidential business information to steal clients from Fern for Viper. That information was acquired by Mr. Lenhof through his employment with Fern, by accessing client data on Fern's Ohio-based computer servers and discussing confidential business information in communications with executives in the Ohio office. Thus, the claims are related to his contacts with Ohio.

### c. Jurisdiction is Reasonable

{¶30} The final due-process inquiry considers whether the claim has a substantial enough connection with Ohio to make it reasonable to compel Mr. Lenhof to defend the suit here. As the *Southern Machine* court put it, "once the first two questions have been answered affirmatively, resolution of the third involves merely ferreting out the unusual cases where [Ohio's interest in resolving the dispute] cannot be found." *Southern Machine* at 384.

{¶31} By enacting the long-arm statute, the legislature has made manifest that Ohio has an interest in any cause of action in which the tortious conduct of an out-of-state actor causes an injury in Ohio. *See id.* (Tennessee's legislators "have declared that State's interest in any cause of action arising from any business transaction in Tennessee"). And where the injury is to a corporation headquartered in Ohio, Ohio's interest in providing a forum for relief is clear. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174, 85 L.Ed.2d 528. Although litigating the claim in Ohio is no doubt inconvenient for Mr. Lenhof, the forum is not so inconvenient as to render the exercise of jurisdiction constitutionally unreasonable. As the *Goldschmidt* court explained, "this case does not present one of those rare instances where Defendant's contacts with the forum state are so minimal that such burden outweighs the interests of Ohio and an Ohio-based business." *Goldschmidt*, 872 F.Supp.2d at 633.

{¶32} "We should be careful not to subvert the expressed interest of [the forum state] by a too grudging interpretation of the long arm statute or a too restrictive view of the requirements of due process." *Southern Machine*, 401 F.2d at 385. "Due process requires only that a defendant not be 'compelled to defend

13

himself in a court of a state with which he has no relevant connection.' " *Id.* at 386, fn. 34.

### IV. Conclusion

{¶33}   Jurisdiction is proper where a defendant has "purposefully 'reach[ed] out beyond' " his home state and into another, and has created "continuing obligations" between himself and residents of the forum.   *Walden*, 134 S.Ct. at 1122, 188 L.Ed.2d 12, citing *Burger King* at 479-480.   By willingly entering the employ of an Ohio-based corporation, and subjecting himself to the supervision and control of his Ohio bosses, Mr. Lenhof did just that.   We find that Mr. Lenhof's contacts with Ohio were sufficient to satisfy traditional notions of fair play and substantial justice.   We, therefore, sustain Fern's sole assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings.

Judgment reversed and cause remanded.

**HILDEBRANDT, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

14